STATE v. ROBERT J. GRUNDLER
AND
STATE v. JOSEPH LEONID JELLY

(Filed 11 November, 1959)

**1. Criminal Law § 143—**

A person convicted of any criminal offense has the right to appeal. G.S. 15-180.

**2. Same—**

A defendant has the right to the dismissal of his appeal only upon application addressed to the sound discretion of the court having jurisdiction and further, in capital cases and in all other serious felonies, it must affirmatively appear that defendant advisedly assented to and directed that his appeal be withdrawn or dismissed.

**3. Criminal Law § 146—**

An appeal becomes effective *eo instanti* the appeal entries are noted and thereafter the Superior Court is *functus officio* to make orders

affecting the merits of the case, however, jurisdiction of all matters pertaining to the settlement of the case on appeal remains in the trial court and it has jurisdiction, even at a later term after notice and a proper showing, to adjudge that the appeal had been abandoned and to proceed in the cause as if no appeal had been taken.

**4. Same: Criminal Law § 143—**

The Superior Court having jurisdiction of a motion of a defendant to set aside an order vacating the appeal also has jurisdiction to reinstate the appeal in the exercise of its sound discretion for good cause shown.

**5. Same: Criminal Law § 139—**

Where defendants base their right to reinstatement of their appeals solely on the ground that order theretofore entered vacating their appeal entries should be set aside for surprise and excusable neglect under G.S. 1-220, their appeals from the denial of their motion will be determined in accordance with the theory advanced in the court below.

**6. Criminal Law § 143—**

The failure of the court to find that the order entered striking defendant's appeal entries and permitting them to abandon their appeal was entered by their mistake, inadvertence, surprise and excusable neglect is conclusive when supported by evidence that defendants advisedly and with full knowledge of the facts requested that they be allowed to abandon their appeals over the protest of their counsel, notwithstanding their evidence *contra* that they were in a state of shock and emotional instability to the extent that they did not and could not comprehend the advice of counsel and the acts done and things said by them at the time in question.

**7. Same: Appeal and Error § 46—**

Whether the facts found constitute excusable neglect is a conclusion of law reviewable on appeal, but even if there is excusable neglect whether the court will set aside a judgment or order rests in its legal sound discretion which will not be reviewed except in cases of gross abuse.

**8. Constitutional Law § 37—**

A defendant may waive a constitutional right relating to a mere matter of practice and procedure.

**9. Criminal Law § 139—**

Ordinarily constitutional questions which are not raised and passed upon in the trial court will not be considered on appeal.

**10. Criminal Law § 143—**

Upon defendants' motions to set aside an order abandoning their appeal on the ground of surprise and excusable neglect, defendants entered a stipulation that the only issue was whether the order should be set aside for mistake, inadvertence, surprise or excusable neglect. *Held*: Upon the court's finding to the effect that there was no mis-

take, inadvertence, surprise or excusable neglect it was not necessary that the court consider whether the appeal had merit.

**11. Same—**

Even if defendants attacking an order for their mistake, inadvertence, surprise and excusable neglect, prove such grounds, the order should not ordinarily be set aside unless the court should further find merit and that a different result would probably be reached.

**12. Criminal Law § 149—**

*Certiorari* is a discretionary writ, and petitioner must show merit or that error was probably committed in the lower court, since the writ will issue only for good and sufficient cause.

**13. Same—**

*Certiorari* is granted in this case for the purpose of considering petitioners' contentions of deprivation of constitutional rights in the trial.

**14. Criminal Law § 87—**

The separate indictments of defendants for rape of the same prosecutrix on the same evening, defendants being in company with each other, *held* properly consolidated for trial, G.S. 15-152, the material evidence being equally pertinent to both indictments.

**15. Rape § 3—**

In a prosecution for rape, the general character of the prosecutrix for unchastity may be shown both to attack the credibility of her testimony and as bearing upon the likelihood of consent, but testimony of specific acts of unchastity with a person other than defendant is properly excluded.

**16. Same: Criminal Law § 80—**

In a prosecution for rape, the State is entitled to prove only the general character of the prosecutrix, and testimony of officers that they had never seen the prosecutrix in establishments where beer was sold is incompetent.

**17. Criminal Law § 91—**

Where the court properly withdraws incompetent evidence from the consideration of the jury and instructs the jury not to consider it, error in its admission is cured in all but exceptional circumstances.

**18. Criminal Law § 84—**

Testimony of officers as to statements witnesses had made to them is competent even though such statements were not made in the presence of defendants, when the testimony of the officers tends to corroborate the testimony of the witnesses upon the trial, and the admission of such testimony cannot be held for error when the court specifically restricts it to the purpose of corroboration.

**19. Criminal Law § 94—**

The interrogation of witnesses by the court solely for the purpose of clarification of their testimony cannot be held erroneous as an expression of opinion by the court on the evidence.

**20. Criminal Law § 161—**
    Exceptions to the charge cannot be sustained when the charge considered contextually is without prejudicial error. G.S. 1-180.

**21. Criminal Law § 156—**
    Minor errors and discrepancies in stating the contentions of the parties must be brought to the attention of the trial court at the time in order for exceptions based thereon to be considered.

HIGGINS, J., not sitting.

APPEAL by defendants from *Parker, J.,* March 1959 Criminal Term, of NEW HANOVER.

Defendants were indicted by the Grand Jury at the February, 1958, Term of Superior Court of New Hanover County in separate bills of indictment. The bills charged each of them with the capital offense of rape. The cases were consolidated for trial and were tried at the March, 1958, Criminal Term of said county before Burgwyn, E. J., and a jury. As to each of them "the jury returned a verdict of guilty of rape with recommendation of life imprisonment." Thereupon the court entered judgment of imprisonment for life as to each. G.S. 14-21. Defendants gave notice of appeal in open court. On the same day and in open court at term, the judge at request of defendants entered an order permitting defendants to abandon and withdraw their appeals and the appeals were thereby dismissed. Thereafter defendants filed petition in Superior Court to set aside the order dismissing the appeals and applied to Supreme Court of North Carolina for *certiorari.*

From "Order and Judgment" denying defendants' petition to set aside order of Burgwyn, E. J., dismissing the appeals, defendants excepted and appealed, assigning errors.

*Attorney General Seawell and Assistant Attorneys General Bruton and Moody for the State.*
*Arthur P. Hartel, Jr., Herbert E. Rosenberg and Edward Norwalk for defendants, appellants.*

MOORE J. Defendants were represented at the criminal trial by counsel of their own choice, employed and paid by them. Upon the coming in of the verdict the jury was polled. The defendants, and each of them, in apt time moved to set aside the verdict, for new trial and in arrest of judgment. Upon the overruling of the motions, defendants gave notice of appeal and made written application in due form to be permitted to appeal in *forma pauperis.* The court

forthwith entered an order providing: (1) defendants are permitted to appeal to Supreme Court without giving bond for costs and in *forma pauperis;* (2) transcript of the trial proceedings and evidence be furnished to defendants and their counsel at public expense; (3) the cases on appeal and appeal briefs, together with the required copies thereof, be typed and furnished at public expense; (4) counsel who had represented defendants at the trial are appointed to prepare and argue the appeals at public expense. One hundred and twenty days were allowed for preparing and serving case on appeal.

About an hour later defendant Grundler and his father signed and delivered to his attorney the following writing:

"Mr. Aaron Goldberg:

On behalf of myself and my son I desire that the appeal taken in this case be withdrawn and abandoned.

This 8th day of March, 1958.

William Henry Grundler
Robert Joseph Grundler."

Immediately thereafter defendant Jelly and his brother signed and delivered to his attorney a written statement as follows:

"Mr. David Sinclair:

On behalf of myself and my brother, I desire that the appeal taken in this case be withdrawn and abandoned.

March 8, 1958.

Raymond F. Jelly
Joseph L. Jelly."

Upon being informed of defendants' desires to withdraw the appeals, the court required that the defendants be brought before the court. The defendants were asked to stand and state in person whether or not they desired the appeals withdrawn and abandoned. Pursuant to defendants' statements that they desired the appeals withdrawn, the court entered an order dismissing the appeals.

Twenty-eight days later, 5 April 1958, Grundler filed a petition in the Superior Court of New Hanover County to set aside the order dismissing the appeal. In the meanwhile he had employed different attorneys, one of them from his home state of New York.

The petition alleged in substance: Petitioner protests his innocence. ". . . (T)he jury's verdict and subsequent sentence of life imprisonment by the court left me in a state of shock and great emotional upset. . . . The only recollection deponent has concerning the signing (request to attorney to withdraw appeal) is that it was suggested that I sign rather than if I lost the appeal and receiving the

Gas Chamber. In my then condition, even though innocent of the alleged crime, the fear of the Gas Chamber and my state of shock caused me to sign anything that was placed before me." Petitioner should be given opportunity to review trial record and confer with his attorney from his home state. An appeal would prejudice no one. The trial attorney and present attorneys advise there is reasonable cause to prosecute the appeal. Petitioner has a meritorious appeal.

The District Solicitor filed answer opposing the petition. The matter came on for hearing at the June 1958 Term before Frizzelle, J., who dismissed the petition on the ground that the Superior Court ". . . has no jurisdiction or authority under G.S. 1-220 to hear the motion . . ." Petitioner appealed. This Court ruled that the judge was in error in dismissing the petition and remanded it for further hearing. *State v. Grundler,* 249 N.C. 399, 106 S.E. 2d 488.

Further hearing upon the petition was had before Parker, J., at the March 1959 Criminal Term of New Hanover County Superior Court. At this hearing it was stipulated that the defendant Jelly "may adopt the original petition filed by . . . Grundler in the original cause and that the State may use the same answer as to Jelly as in the *Grundler* case . . ." It was further stipulated "that the only issue is whether or not the order revoking the order granting a right to appeal in *forma pauperis,* signed by the Hon. Burgwyn, J., should be set aside for mistake, inadvertence, surprise or excusable neglect."

Evidence in support of the petition tends to show: Grundler and Jelly are 22 and 23 years of age, respectively. They are members of the U. S. Marine Corps. Grundler is from New York and Jelly from Massachusetts. They had believed they would be acquitted and were shocked at the verdict and sentence. They were emotionally upset and cried. They were never in court before. They desired to appeal and knew they had been granted 120 days to prepare appeal. They made no request for appeal in *forma pauperis;* their families were and are willing to bear the expense. They were so emotionally disturbed that they did not know until April they had signed away their right to appeal. They knew that upon a new trial they would be tried for the capital offense and had possibility of a death sentence. They are informed they have meritorious grounds for appeal. They waive the relationship of attorney and client and agree that Messrs. Goldberg and Sinclair be called to testify. Grundler's father and Jelly's brother were with them throughout the trial. They too were shocked and emotionally upset by the verdict and judgment, did not realize what transpired thereafter, did not know the

appeal had been withdrawn until weeks later. They have financial means to defray expenses of appeal for their son and brother.

Other evidence adduced at the hearing tends to show: Defendants' attorneys did not promise or guarantee a favorable verdict. About an hour after appeal entries had been made defendants requested their attorneys to withdraw the appeals. Attorneys protested, asked them to take more time to consider and to confer with attorneys in their home states. When defendants insisted on withdrawing appeals, attorneys required that the requests be put in writing. The judge refused to dismiss the appeals on the written requests, had the defendants brought before him, and required them to stand and personally state whether or not they desired the appeals withdrawn. Defendants in person in open court requested the judge to withdraw the appeals. The order was then made. Mr. Goldberg is a lawyer of 31 years experience at the New Hanover County Bar. Mr. Sinclair has been a practicing attorney for 35 years, four years of which he was District Solicitor; he has been defense counsel in 35 capital cases. An assistant clerk of the court saw defendants sign the application to appeal in *forma pauperis* and the requests to withdraw the appeals. In each instance they told him they understood what they were signing and it appeared to him that they did. Several weeks after the trial, Grundler's father and his present attorney from New York went to the office of the District Solicitor and discussed the possibility of a future parole for Grundler. After this the petition herein was filed.

After hearing the evidence, Judge Parker found the following pertinent facts.

> "2. That upon the trial of the cause the defendant Robert J. Grundler was represented by the Honorable Aaron Goldberg, of the New Hanover County Bar, and the defendant Joseph Leonid Jelly was represented by the Honorable David Sinclair, of the New Hanover County Bar; that both attorneys . . . are outstanding, efficient and accomplished Counselors at Law, possessing unquestionable integrity and ability, and at all times concentrated their legal efforts for the best interest of their client."

> "5. That each defendant was allowed to appeal to the Supreme Court of North Carolina in *forma pauperis*, which also appears of record.

> "6. That thereafter, and within a period of approximately one hour, William Henry Grundler, who had been present during the trial and participated in the conference with Attorney

Goldberg and his son, the defendant, moved the Court to be permitted to withdraw his appeal, which withdrawal was allowed by the Court, after questioning the defendant Grundler in open court, and after the defendant Robert J. Grundler, along with his father, William Henry Grundler, had signed a statement to his attorney, the Honorable Aaron Goldberg, specifically requesting that such motion for withdrawal of appeal be made before the Court by his Attorney Goldberg.

"7. That this motion for withdrawal of appeal was made under protest by Attorney Goldberg, and against his advice, and after the defendant Robert J. Grundler, in the presence of his father, William Henry Grundler, had been fully advised of his rights in the matter of said appeal, as will appear from the evidence in this hearing.

"8. That the defendant Joseph Leonid Jelly, along with his brother Raymond Jelly, who likewise had been present during the trial and participated in the conference with Attorney David Sinclair and his brother, the defendant, moved the Court to be permitted to withdraw his appeal, which withdrawal was allowed by the court after questioning the defendant Joseph Leonid Jelly in open Court, and further the defendant Joseph Leonid Jelly, along with his brother Raymond Jelly, had signed a statement to his attorney, the Honorable David Sinclair, specifically requesting that such motion for withdrawal of appeal be made before the Court by his Attorney, Sinclair.

"9. That this motion for withdrawal of appeal was made under protest by Attorney Sinclair, and against his advice, and after the defendant Joseph Leonid Jelly, in the presence of his brother Raymond Jelly, had been fully advised of his rights in the matter of said appeal, as will appear from the evidence in this hearing."

The court further found that defendants were "fully informed by said counsel of all the facts and circumstances surrounding said orders, and (defendants) fully comprehending and understanding the same." The court concluded that the order dismissing the appeal was not entered because of mistake, inadvertence, surprise and excusable neglect of defendants. Defendants' petition was denied and defendants appealed.

A person convicted of any criminal offense in Superior Court "shall have the right to appeal." G.S. 15-180. An appellant has the right to dismiss his appeal with leave of court. *U. S. v. Griffith* (1890), 141 U.S. 212. An appeal is under the control of the court

for all purposes and appellant does not have absolute right to dismiss it. In capital cases and in other serious felonies it must affirmatively appear that the prisoner advisedly assents to, desires and directs that his appeal be withdrawn and dismissed. *State v. Leak*, 90 N.C. 655. To make the withdrawal effective the court must so order and leave of court is required. 5 C.J.S., Appeal and Error, sections 1350 and 1351, pp. 397-401. Application to withdraw appeal is addressed to the sound discretion of the court. *Luther v. Luther* (Ala. 1924), 100 So. 497, 498; *Dadabaugh v. Just* (Minn. 1947), 30 N.W. 2d 534.

Application to withdraw appeal must be made to the proper tribunal, the court having jurisdiction to dismiss. L.R.A. (1917A) 117. It has been held in this jurisdiction that when appeal entries are noted, the appeal becomes effective *eo instanti*, and the Superior Court is *functus officio* to make orders affecting the merits of the case. *Bailey v. McPherson*, 233 N.C. 231, 239, 63 S.E. 2d 559. But the court in its discretion may, upon application of appellant, dismiss the appeal during the term at which the case was tried. Jurisdiction of all matters pertaining to the settlement of the case on appeal remains in the trial judge. And it has been held that the judge presiding at a later term, after notice and on proper showing, may adjudge that the appeal has been abandoned and proceed in the cause as if no appeal had been taken. *Hoke v. Greyhound Corp.*, 227 N.C. 374, 376, 42 S.E. 2d 407.

"As a general rule, it is within the discretion of an appellate court, upon good cause shown, to reinstate an appeal . . . provided there has been no laches." 3 Am. Jur., Appeal and Error, sec. 759, pp. 327-328. We perceive no good reason why this rule does not apply with equal force to the trial court where it has jurisdiction to hear the matter. In the instant case we have declared that the trial court did have such jurisdiction. *State v. Grundler, supra*. However, in this case the State and the defendants stipulated that the Court should inquire only as to whether the order of dismissal should be set aside for mistake, inadvertence, surprise or excusable neglect. It is clear that the parties brought themselves within the framework of G.S. 1-220. The matter will be considered here upon the same theory as that adopted by the parties below. *Waddell v. Carson*, 245 N.C. 669, 673, 97 S.E. 2d 222; *Paul v. Neece*, 244 N.C. 565, 570, 94 S.E. 2d 596. We state parenthetically that the judge below had authority to reinstate the appeal upon any ground which might have seemed satisfactory and just to him in the exercise of his sound discretion.

The pertinent portion of G.S. 1-220 provides: "The judge shall,

upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, verdict or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect . . ."

Defendants' first four assignments of error relate to the failure of the court to find in fact and in law that the order dismissing the appeal was obtained through their mistake, inadvertence, surprise or excusable neglect. They contend that such failure and the contrary finding by the court was error. They contend that because of the verdict and judgment they were in a state of shock and emotional instability to the extent that they could not and did not comprehend the advice of counsel and the acts done and things said by them at the time in question. The court found to the contrary. The findings of fact by the court are based on competent evidence. We have consistently held in a long line of cases that the findings of fact by the trial court upon the hearing of a motion to set aside a judgment for mistake, inadvertence, surprise or excusable neglect, G.S. 1-220, are conclusive on appeal when supported by any competent evidence. *Sanders v. Chavis*, 243 N.C. 380, 385, 90 S.E. 2d 749; *Perkins v. Sykes*, 233 N.C. 147, 151, 63 S.E. 2d 133; *Hanford v. McSwain*, 230 N.C. 229, 233, 53 S.E. 2d 84; *Craver v. Spaugh*, 226 N.C. 450, 452, 38 S.E. 2d 525; *Carter v. Anderson*, 208 N.C. 529, 531, 181 S.E. 750; *Helderman v. Mills Co.*, 192 N.C. 626, 628, 135 S.E. 627.

"The findings of fact by the judge are conclusive, except when there is no evidence to support them. (Citing authorities). Whether the facts found constitute excusable neglect is a conclusion of law reviewable on appeal. But if there is excusable neglect, whether the judge shall then set aside the judgment or not rests 'in his discretion,' . . . from which an appeal lies only when there has been a clear abuse of such discretion. (Citing cases). The discretionary power only exists when excusable neglect has been shown. (Citing cases)." *Morris v. Insurance Co.*, 131 N.C. 212, 42 S.E. 577. The discretion is held to be a legal discretion and therefore reviewable. But it will not be reviewed except in cases of gross abuse. *Rierson v. York*, 227 N.C. 575, 578, 42 S.E. 2d 902.

In the case at bar the findings of fact support the legal conclusion that "there was no mistake, inadvertence, surprise or excusable neglect in regard to . . . the withdrawal of said notice of appeal and appeal by the defendants." We find no error of law in this legal conclusion.

The judge was not required to adopt defendant's version of the

facts. The facts were in dispute. The court found the facts in accordance with the evidence favorable to the State's position. This the court had a right to do. Defendants in their brief and in the argument here failed to point out any error of law on the part of Judge Parker with respect to the hearing and the judgment entered by him. Appellants must show error. *Johnson v. Heath,* 240 N.C. 255, 258, 81 S.E. 2d 657.

The fifth assignment of error urges that Judge Parker abused his discretion in refusing to relieve defendants from the order dismissing the appeal. Actually upon the facts as found the judge was not called upon to exercise a discretion. Upon the whole record no abuse of discretion appears and defendants do not point out any respect in which discretion was abused.

In the sixth and last assignment of error defendants attempt to raise a constitutional question on this appeal. They assert that at the hearing and in the judgment they were denied due process and equal protection of the law in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

A careful scrutiny of the record discloses that no such question was raised in defendants' petition or at any time during the hearing below. This matter was injected for the first time on appeal. The assignment of error refers to no exception taken and to no ruling of the court. Furthermore, defendants entered into a stipulation at the hearing "that the only issue is whether or not the order . . . should be set aside for mistake, inadvertence, surprise or excusable neglect." Under certain circumstances a constitutional right may be waived. *In re Steele,* 220 N.C. 685, 18 S.E. 2d 132; *Jennings v. Illinois,* 342, U.S. 104, 109. A defendant may waive a constitutional right relating to a mere matter of practice and procedure. *Miller v. State,* 237 N.C. 29, 48, 74 S.E. 2d 513. "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464.

The purported question was injected for the first time on appeal. The attempt to smuggle in new questions is not approved. *Irvine v. California,* 347 U.S. 128, 129. Appellate courts will not ordinarily pass upon a constitutional question unless it affirmatively appears that such question was raised and passed upon in the trial court. *State v. Jones,* 242 N.C. 563, 564, 89 S.E. 2d 129. This is in accord with the decisions of the Supreme Court of the United States. *Edelman v. California,* 344 U.S. 357, 358.

In support of defendants' contention that they have been denied "due process" and "equal protection of the laws" reliance is made

almost entirely on the case of *Griffin v. Illinois,* 351 U.S. 12. They quote extensively therefrom. It will be observed that the decision in the *Griffin* case is by a divided court and there is no majority opinion. This case simply decides that where a State provides for an appeal to an appellate court from a criminal conviction the poor must have the same adequate appellate review as is accorded the rich even if it requires that the expense of transcript, prosecution of the appeal and other costs be borne by the State. With this proposition our Court is in thorough accord and the law of this State so provides. G.S. 15-181. In the instant case the trial court granted the right to appeal in *forma pauperis* and ordered that transcript, case on appeal, briefs and counsel be provided at public expense. The *Griffin* case has no application to the facts in this case. Defendants attempt to draw the unwarranted conclusion that the *Griffin* case guarantees adequate appellate review at any time and under such terms as appellant chooses and without regard for the rules of the court and the requirements of procedure. If defendants' contention is carried to its logical conclusion, it would be compulsory to grant an appeal to every defendant convicted of a serious felony whether he wanted to appeal or not. Compliance with rules of court is uniformly required by appellate courts. *Brown v. Allen,* 344 U.S. 443. Defendants advisedly withdrew their appeals. It would seem that they were motivated by fear of the possible consequences of a new trial. They have since changed their minds and seek to be relieved of their own solemn decision, suggesting some vague and sinister deprivation of constitutional rights.

Defendants' appeal might well have been dismissed without discussion. The assignments of error refer to no exceptions taken and we find no numbered exceptions in the record. Rule 19(3) of the Rules of Practice in the Supreme Court of North Carolina, 221 N.C. 553 *et seq.*

The judgment below is affirmed.

It is apparent that Judge Parker gave no consideration to the question as to whether or not defendants had a meritorious appeal. There are two very good reasons why he did not deal with this subject. In the first place it was removed from his consideration by the stipulation above referred to. Secondly, his findings of fact rendered it unnecessary that he consider the question. Ordinarily an order or judgment will not be set aside unless it appears that there is merit and that a different result probably will be reached by so doing. *Craver v. Spaugh, supra.*

Perhaps defendants were influenced in entering into the stipula-

tion restricting the scope of Judge Parker's inquiry by the fact that they had petitioned this Court for *certiorari*. A petition for the writ must show merit or that error was probably committed below. *In re Snelgrove*, 208 N.C. 670, 672, 182 S.E. 335. *Certiorari* is a discretionary writ, to be issued only for good and sufficient cause shown. *Womble v. Gin Company*, 194 N.C. 577, 579, 140 S.E. 230.

We are constrained to allow the petition. We wish to emphasize that we are not induced so to do by reason of any error on the part of Judge Parker, for there was none. Defendants have filed with their petitions for writ of *certiorari* the record proper, the proceedings, the transcript of the evidence (in narrative form as required by our rules—Rule 19(4) ) and the charge of the court had upon the criminal trial. They have also filed briefs pointing out what they conceive to be prejudicial errors in the trial. For the purpose of considering the matters thus raised we grant the writ. We do not deem further argument here of value. In their arguments heretofore heard by this Court counsel have pointed out and discussed what they consider to be the merits of their proposed appeals.

The following is a brief statement of the facts:

State's evidence tends to show: Prosecutrix is the wife of a member of the U. S. Marine Corps serving overseas. She lives in Wilmington with her brother. On the night of 1 February 1958 she went to a movie. Afterwards she rode about two blocks with a friend, Ronnie Wingate, a marine. She then went to a cafe on Market Street for coffee. The defendants came into the cafe and approached her. Jelly asked her to go out with them. Grundler said nothing. Prosecutrix told them to leave her alone. She left the cafe without finishing her coffee. A waitress in the cafe heard and observed the occurrence. There were no other marines in the cafe. Jelly followed her. It was snowing. Grundler paid for his and Jelly's orders, left the cafe, drove their car to a street corner where prosecutrix would pass. Jelly accosted prosecutrix, offered her money and was told she was not for sale. At the car Jelly stopped her and took her arm. She screamed. He hit her in the face and placed his hand over her mouth. She screamed again and he struck her a second time and forced her into the car. It was about 11:30 P. M. Grundler drove away. Two members of the U. S. Air Force, who were about 60 yards away, heard her scream and saw Jelly strike her and drag her into the car. They immediately reported the incident to the police. A search for the car was begun. When prosecutrix was examined next morning by physicians her jaw was swollen, she had three loose teeth and her cheek bone was fractured in three places. Grundler drove them to a rural

area. Jelly held her down and took off her underclothes. She begged him not to rape her. When she offered resistance, he told her if she wasn't quiet and didn't lie still he would strike her again. She was afraid he would kill her. He then had an act of sexual intercourse. Grundler then stopped the car and got in the back seat with her and asked her to yield to him. She told him not to have intercourse. When he insisted, she told him if he was going to have intercourse to hurry up and take her to a doctor. Grundler then performed the act. Jelly then asked her to perform an unnatural act of intercourse. She told him her jaw was broken. They put her out of the car in the country several miles from her home. She was picked up by a passing car and carried home. Her scarf and gloves were bloody and two buttons were missing from her dress. She related the occurrence to her brother but did not notify police. A highway patrolman stopped defendants' car nine miles north of Wilmington. There was blood on the door post and back seat. Defendants stated they had been to Myrtle Beach in South Carolina and the blood came from one of their buddies who had had trouble there. At request of the patrolman defendants returned to Wilmington. Blood stains were found on Jelly's hand and jacket. The buttons from prosecutrix's dress were found in the car. Grundler later told of the occurrence but denied that prosecutrix had been raped or assaulted to his knowledge.

Defendants' evidence tends to show: Members of the U. S. Marine Corps, Konieczny and Wenzell, had known prosecutrix for some time and had taken her out for rides on three occasions. On this night they had taken her out and remained parked with her in a rural area for about forty-five minutes. She had told them she was widow of a marine who had been killed. After they returned her to Wilmington and put her out, they saw defendants and told them prosecutrix was at the cafe. Defendants proceeded to the cafe and talked to prosecutrix who was friendly. Jelly walked from the cafe and up the street with his arm about her waist. Merrigan and McCollum, marines, were in the cafe and witnessed the occurrence. At the car prosecutrix slipped and fell and Jelly helped her up and into the car. She did not scream. Jelly had intercourse with her first. She was cooperative. She took off her underclothes voluntarily. She consented for Grundler to have intercourse. Afterwards she wanted money. They put her out at her request. She said she lived near there. She never said she was hurt or frightened. She was bleeding.

In rebuttal prosecutrix testified that Merrigan and McCollum were

not in the cafe at any time while she was there and that she did not know Konieczny and Wenzell and had never been out with them.

We consider defendants' assignments of error in order.

(1) Defendants contend the court was in error in consolidating the cases for trial. They insist there should have been a severance. The record does not disclose that defendants excepted to the consolidation or that they moved for a severance. The rule of law with respect to consolidation of indictments is stated in *State v. Bryant*, 250 N.C. 113, 115, 108 S.E. 2d 128, quoting from *State v. Combs*, 200 N.C. 671, 674, 158 S.E. 252, as follows: "The court is expressly authorized by statute in this state to order the consolidation for trial of two or more indictments in which the defendant or defendants are charged with crimes of the same class, which are so connected in time or place as that evidence at the trial of one of the indictments will be competent and admissible at the trial of the others. C.S. 4622 (now G.S. 15-152). (Citing cases)." It is so obvious that the indictments in this case fall within this rule that further discussion is deemed unnecessary. The material evidence is equally pertinent to both indictments.

(2). After testifying on direct examination that he had a date with prosecutrix on the night of 1 February, 1958, and had remained parked with her about forty-five minutes, the witness Konieczny was asked whether or not he had sexual intercourse with her on that occasion. The State objected and the court sustained the objection. Had he been permitted to answer he would have testified that he did. Defendants assert that this evidence was competent on the question as to whether or not the prosecutrix consented in the case *sub judice*.

As to whether specific acts of sexual intercourse with third parties are admissible in cases of rape as evidence tending to show likelihood of consent, courts are in disagreement. ". . . (W)hile some authority holds that specific acts of intercourse or lewdness committed by the prosecutrix with other persons may be shown, other authority requires prosecutrix' want of chastity to be shown by evidence of general reputation for unchastity and not by proof of specific acts." 75 C.J.S., Rape, sec. 63, pp. 535-536. This question is fully annotated in 140 A.L.R., 364 *et seq.* "Without exception, the cases hold that previous want of chastity may be shown by proof of reputation." *(ibid,* p. 380). It would seem that the greater weight of authority is that specific acts of unchastity are inadmissible *(ibid,* p. 383). "In perhaps the greater number of cases it is held that while the general reputation for chastity of a complaining witness may be shown, both as attacking the truth of her testimony and the question of whether she has consented to the intercourse, specific acts of unchastity are held

to be inadmissible. The reason generally given in the cases where the one class of evidence is admitted and the other is refused, is that the witness will be prepared to meet attacks on her general reputation, while she may be taken by surprise and not able to defend herself against specific charges." *State v. Wood* (Ariz. 1942), 122 P. 2d 416, 140 A.L.R. 361. "Basis of rule limiting evidence of unchastity of prosecutrix in prosecution for rape to proof of general character in that respect is the unwisdom of opening door to collateral issues tending rather to hinder than promote justice." *Stone v. State* (Ala. 1943), 11 So. 2d 386.

Our Court has held that for the purpose of impeachment the prosecutrix may be cross-examined concerning specific acts of unchastity. *State v. Murray,* 63 N.C. 31, 32. And that where the chastity of the prosecuting witness is directly in question, her reputation for chastity may be shown. *State v. Connor,* 142 N.C. 700, 705-6, 55 S.E. 787; *State v. Daniel,* 87 N.C. 507, 508-509. But we have held that specific acts of unchastity with persons, other than defendant, are inadmissible in rape cases. *State v. Jefferson,* 28 N.C. 305, 307. This case is listed in 140 A.L.R., 386, annotation referred to above, as supporting the minority view. We do not so construe it. In that case it is said: "No doubt, too, that it would have been proper to receive evidence, that the woman was a strumpet, upon similar grounds; and particularly, that she had illicit intercourse with other(s) . . . But that ought only to be done upon general evidence . . ." The court in the instant case did not commit error in excluding evidence of specific acts of unchastity with persons, other than defendants.

(3). The court over the objection of defendants permitted law enforcement officers, seven in number, to testify that they had never seen prosecutrix in establishments where beer was sold. This evidence was incompetent. The State may only prove her general character—it may not offer proof of particular traits of character. North Carolina Evidence: Stansbury, sec. 110, p. 206, and cases there cited. However, His Honor promptly withdrew this evidence from the considerations of the jury and instructed them not to consider it either for or against the defendants. "The power of the court to withdraw incompetent evidence and to instruct the jury not to consider it has long been recognized in this State . . . In *McAllister v. McAllister,* 34 N.C., 184, *Ruffin, C. J.,* said: 'It is undoubtedly proper and in the power of the court to correct a slip by withdrawing evidence from the consideration of the jury. . . .' " *State v. Green,* 251 N.C. 40, 46, 110 S.E. 2d 805, and the many cases there cited. If the matter complained of by defendants is error, it is not prejudicial error.

(4). Defendants complain that the court permitted police officer Sykes to repeat on the witness stand statements made to him by members of the U. S. Air Force who had theretofore testified in the case. These statements had not originally been made in the presence of defendants. The statements were competent to corroborate the Air Force witnesses, and the court specifically restricted the evidence to that purpose. This exception is without merit.

(5). Defendants assert that the court erred in interrogating some of the witnesses, that the judge thereby expressed opinion as to the weight of the evidence. The record discloses no objection or exception thereto. Nevertheless, we have carefully considered these questions and answers. We find that they were only for clarification. *State v. Stevens,* 244 N.C. 40, 44, 92 S.E. 2d 409; *State v. Carter,* 233 N.C. 581, 583, 65 S.E. 2d 9.

(6). The final exceptions are to the court's instructions to the jury. The charge, when considered conjunctively and contextually, properly declared and explained the law arising on the evidence. G.S. 1-180. *State v. Hodgin,* 210 N.C. 371, 378-379, 186 S.E. 495. There were no requests for special instructions. *State v. Coal Co.,* 210 N.C. 742, 755, 188 S.E. 412. If there were minor errors and discrepancies in the giving of contentions of the parties, these must be called to the attention of the court at the time so that correction may be made. None were called to the attention of the court. *State v. Bowser,* 214 N.C. 249, 255, 199 S.E. 31. Equal stress was given to the contentions of the State and defendants. *State v. Smith,* 237 N.C. 1, 27, 74 S.E. 2d 291. We find no error in the court's charge to the jury.

In the trial of these cases we find no error.

On the appeal, affirmed.

In the trial, no error.

HIGGINS, J., not sitting.