SHARRON Y. THORNBURG v. ROBERT ALEXANDER LANCASTER AND
MARTHA MITCHELL LANCASTER

No. 90

(Filed 5 May 1981)

1. **Torts § 7.7— settlement as partial or complete—issue of fact—reimbursement order improper**

In an action to recover for personal injuries sustained by plaintiff in an automobile accident where there was an issue of fact as to whether a payment made to plaintiff ·by defendants' insurer was a partial or final settlement, the trial court's reimbursement order with which plaintiff did not comply was improperly entered, since under G.S. 1-540.3 acceptance of partial or advance payments, absence a properly executed *full* settlement agreement, does not bar the party receiving the payments from suing on the underlying claims.

2. **Rules of Civil Procedure § 41— failure to comply with erroneous order of trial court—order of dismissal improper**

A dismissal under G.S. 1A-1, Rule 41(b) may not be premised upon a party's failure to comply with an erroneous order.

Justice HUSKINS dissenting.

Justices COPELAND and BRITT join in the dissenting opinion.

ON appeal of right by defendants from the decision of the Court of Appeals, one judge dissenting, reported at 47 N.C. App. 131, 266 S.E. 2d 738 (1980), reversing the dismissal of plaintiff's action entered by *Collier, Judge,* at the 29 May 1979 Civil Session of Superior Court, GUILFORD County.

By this appeal, we construe the meaning and scope of G.S. 1-540.3(a), which provides, *inter alia,* that the receipt of advance or partial payments for any claim, potential civil action or action in which any person claims to have sustained *bodily injuries* .does not bar or discharge the claims of the person receiving the payments except when the parties have properly executed an agreement in full settlement of all claims.

This case was argued at No. 61 at the Fall Term 1980.

*Gerald S. Schafer for plaintiff-appellee.*

*Tuggle, Duggins, Meschan, Thornton & Elrod, P.A., by Richard L. Vanore, for defendant-appellants.*

CARLTON, Justice.

I.

Plaintiff seeks to recover for personal injuries she sustained when her automobile collided with one owned and operated by defendants. In their answer, defendants alleged that plaintiff is barred from bringing this action because she entered into a settlement agreement with defendants' insurance carrier and was paid $3,394.50 as a full and final settlement of her claim.

Defendants filed a motion to dismiss pursuant to Rule 12 and further prayed, in the alternative, that a motion for summary judgment under Rule 56 be granted in their favor.

At the hearing on those motions, Shirley Bennett, a claims representative for defendants' insurer, testified that she handled plaintiff's claim. After several conversations and after plaintiff had furnished medical reports and bills to the claims adjuster, Bennett testified that she and plaintiff agreed to settle the case for $3,000 above plaintiff's medical expenses. After that conversation, Bennett prepared the necessary drafts and releases and mailed them to plaintiff with the following cover letter, dated 23 June 1977:

Dear Mrs. Thornburg:

As per phone conversation, enclosed are draft and releases. Please sign and have your husband witness your signature. I have paid Dr. Faga direct.

Thank you for your cooperation. Please return the releases in self addressed stamped envelope enclosed.

Yours very truly,

ST. PAUL FIRE & MARINE INS. CO.

Shirley L. Bennett
Claims Representative

Enclosures

The releases referred to were entitled "FULL AND FINAL RELEASE OF ALL CLAIMS."

Bennett testified that she had no further contact with the plaintiff until 26 July 1977, when the plaintiff telephoned her to

complain of additional medical bills incurred and surgery required as a result of the accident. Bennett told her that if she was not satisfied with the settlement "to send everything back." Plaintiff returned the releases with the additional medical bills on 15 August 1977, but informed Bennett by telephone that she could not return the draft because she had deposited it in her account. Plaintiff also told Bennett at that time, according to Bennett's testimony, that she, the plaintiff, "didn't think it was a final settlement because it was not marked on the draft."

Plaintiff testified that she received the release and draft on or about 26 June 1977. At about the same time, but in any event prior to depositing the draft, plaintiff discovered a knot on her chest. Plaintiff deposited the draft in her checking account sometime before 30 June but did not sign the release. The draft did not contain a release clause. During the first week of July, she consulted her physician, who told her that the knot was cartilage damage to her ribs, apparently caused by the accident. Plaintiff stated that she called Bennett "around the first week in July" to tell her that there would be additional medical expenses. Mrs. Bennett allegedly told both plaintiff and her husband to keep and cash the draft and to send the releases back with the additional bills, which the insurance company would pay. Plaintiff did so. Plaintiff testified that at that time she was unable to return the draft because she had deposited it, but that she offered to send back cash in the amount of the draft. Mrs. Bennett told her to keep it. Plaintiff also stated that she intended that settlement to cover only the "original" injury to her back and neck and that she did not intend that it be a final settlement of all claims.

During the second week of July, plaintiff was admitted to the hospital and underwent surgery to repair the damage to her ribs. Plaintiff's complaint alleged that she incurred medical bills of approximately $1,600 and was unable to work for a period of time, resulting in lost earnings in excess of $900.

Plaintiff's husband's testimony corroborated that of plaintiff.

At the conclusion of the hearing on 4 April 1979, the court filed an order denying defendants' motion to dismiss and, in the alternative, for summary judgment. Judge Kivett ordered plaintiff to reimburse defendants the $3,073.50 paid to her and the

$320.00 paid to her doctor. Plaintiff filed objections and exceptions to the order on 5 April 1979 but did not give notice of appeal. On 3 May 1979 defendants moved to have plaintiff's action dismissed with prejudice for her failure to comply with the reimbursement order. On 24 May 1979 plaintiff filed an affidavit attesting that she did not have and was unable to borrow sufficient funds to comply with the order. On 7 June 1979 Judge Collier ordered a dismissal of plaintiff's action under Rule 41(b) of the North Carolina Rules of Civil Procedure unless within ten days plaintiff complied with the reimbursement order. Plaintiff did not comply, her action was dismissed, and she appealed to the Court of Appeals.

The Court of Appeals reversed the dismissal on the grounds that there was conflicting testimony as to whether the payment was final, advance or partial. Judge Erwin, for the court, wrote that although at the time the draft was tendered the parties intended it to be a final payment, there was conflicting testimony as to the conversations between the insurance adjuster and plaintiff and plaintiff's husband, raising an issue of fact as to whether that was initially intended as final payment was converted to a partial payment by the insurance adjuster's promise that her company would pay the additional medical bills.

The court reasoned that an issue of fact as to the character of the payment rendered the reimbursement order improper because such an order cannot be entered unless the finality of the payment is undisputed. Because the trial court, in this case, necessarily had to make a factual determination prior to the entry of the order, the reimbursement order was invalid. The Court of Appeals then ordered the case remanded to the trial court for a determination of whether plaintiff's failure to comply with the erroneous reimbursement order was proper grounds for a dismissal with prejudice under Rule 41(b). Defendants' cross-assignments of error concerning the trial court's denial of defendants' motions for dismissal and summary judgment were deemed without merit.

Judge Clark, in dissent, found no dispute as to the finality of the payment and therefore considered G.S. 1-540.3 to be inapplicable. He reasoned that because the payment was neither partial nor advance, the trial judge had authority to enter the reimbursement and the dismissal was proper.

II.

[1]   The threshold issue in this appeal is whether the reimbursement order with which plaintiff did not comply was properly entered. The propriety of the order depends on whether the payment to plaintiff was partial or final.

Our decision in this case is controlled by G.S. 1-540.3 (Cum. Supp. 1979), which, in relevant part, provides:

> (a) In any claim, potential civil action or action in which any person claims to have sustained bodily injuries, advance or partial payment or payments to any such person claiming to have sustained bodily injuries or to the personal representative of any person claimed to have sustained fatal injuries may be made to such person or such personal representative by the person or party against whom such claim is made or by the insurance carrier for the person, party, corporation, association or entity which is or may be liable for such injuries or death. Such advance or partial payment or payments shall not constitute an admission of liability on the part of the person, party, corporation, association or entity on whose behalf the payment or payments are made or by the insurance carrier making the payments. . . . The receipt of the advance or partial payment or payments shall not in and of itself act as a bar, release, accord and satisfaction, or a discharge of any claims of the person or representative receiving the advance or partial payment or payments, unless by the terms of a properly executed settlement agreement it is specifically stated that the acceptance of said payment or payments constitutes full settlement of all claims and causes of action for personal injuries or wrongful death, as applicable.
>
> (b) . . . .
>
> No claim for reimbursement may be made or allowed by or on behalf of the person or party making such advance payment or payments against the person or party to whom such payment or payments are made except a claim based on fraud.

This statute, by its express terms, applies only to partial or advance payment and prohibits claims for reimbursement only when the payment made was partial or advance; it does not affect the power of a trial judge to order reimbursement when the payment or payments made were in final settlement of all claims. Thus, the propriety of the reimbursement order in the case *sub judice* depends on whether the payment made was partial or final.

The rule governing this determination was altered by the enactment of G.S. 1-540.3. Prior to the passage of G.S. 1-540.3 the intention of the parties regarding the character of the payment was irrelevant. At common law, acceptance by a claimant of any payment, no matter how large or small, accompanied by a statement that the payment is in full settlement constituted accord and satisfaction and operated, *as a matter of law*, to bar any further claim against the party making the payment, *see, e.g., Fidelity & Casualty Co. of N.Y. v. Nello L. Teer Co.*, 250 N.C. 547, 109 S.E. 2d 171 (1959). The obvious purpose of the Legislature in enacting G.S. 1-540.3 was to alleviate the harsh consequences of application of the accord and satisfaction doctrine to personal injury cases and to encourage the making of partial payments to the claimant prior to an agreement on a final settlement. As a result of this statute, seriously injured persons who require long-term medical treatment can now accept piecemeal payments from an insurer before any determination of liability, and those payments represent neither an admission of liability on the part of the insurer nor full satisfaction of the injured party's claims. Under the present law, acceptance of partial or advance payments, absent a properly executed *full* settlement agreement, does not bar the party receiving the payments from suing on the underlying claim. Thus, if the 25 June 1977 payment to plaintiff was a partial or advance payment, her negotiation of the draft does not bar this suit because there is no properly executed settlement agreement, and the entry of the reimbursement order was improper.

Although G.S. 1-540.3 is concerned solely with advance or partial payments, it nowhere defines those terms or indicates how the character of the payment is to be determined. As stated above, whether the payment was partial or final under the statute depends upon the intent of the parties giving and receiving it. The determination of intent is a question of fact and,

therefore, can be resolved only by the trier of fact unless the evidence of intent is undisputed.

The reimbursement order in this case was entered prior to trial and in response to motions to dismiss and for summary judgment. Because a trial judge on such motions cannot resolve issues of fact, *e.g., White v. White*, 296 N.C. 661, 252 S.E. 2d 698 (1979); *Page v. Sloan*, 281 N.C. 697, 190 S.E. 2d 189 (1972), the order is proper only if the trial judge could find, *as a matter of law*, that the payment was final.

The testimony at the hearing on defendants' motion for summary judgment reveals that there was a dispute regarding the character of the settlement agreement reached. Bennett, the claims adjuster for defendants' insurance carrier, testified that she regarded the agreement as a final settlement of all of plaintiff's claims arising out of the automobile accident. Plaintiff stated that she considered the agreement to cover *only* the injury to her back and neck. Plaintiff's testimony that she intended the settlement to cover only her claim for the injury to her back and neck is sufficient to create an issue as to a material fact, the character of the payment, and to take her case to the jury.[1] Thus, the trial judge could not have found as a matter of law that the payment was final; the trial court's denial of the motions for dismissal and summary judgment was proper; and the entry of the reimbursement order violated the provisions of G.S. 1-540.3, rendering it invalid. The Court of Appeals properly so held.

### III.

[2] The remaining question is whether a dismissal under Rule 41(b) of our Rules of Civil Procedure may be premised upon a party's failure to comply with an erroneous order. The Court of Appeals did not decide this question, but vacated the dismissal and remanded for a new ruling in the discretion of the trial court. With this portion of the Court of Appeals' decision, we disagree.

---

1. Our decision that an issue of fact existed is not premised in any way on plaintiff's testimony as to what occurred *after* she cashed the draft. The dissent erroneously claims that this decision will allow a claimant to convert a final settlement into a partial or advance one by his or her unilateral action. This decision stands only for the proposition that, absent a properly executed settlement agreement, a claimant's testimony that he or she, at the time of the agreement, intended the settlement to be partial or advance creates an issue of fact and is enough to take the case to the jury.

There is nothing in the record before us to indicate that Judge Collier, in hearing the Rule 41(b) motion, gave consideration to the propriety of Judge Kivett's earlier order of reimbursement. He acted properly in this respect, for the only question before him was whether plaintiff had complied with the earlier order. It is well settled in this jurisdiction that one superior court judge cannot correct another's errors of law or change the judgment of another superior court judge previously made in the same action. *E.g., Calloway v. Ford Motor Company*, 281 N.C. 496, 189 S.E. 2d 484 (1972). For Judge Collier to refuse to grant the Rule 41(b) motion on the ground that he disagreed with the earlier order of a fellow superior court judge would, therefore, have been erroneous.

We, however, are not bound by this restriction. Because we hold that the earlier order for reimbursement is invalid, the Rule 41(b) order of dismissal must now fall as well. We agree with the Court of Appeals that no North Carolina or federal case can be found on point. It requires no citation of authority, however, to know that a grave injustice would be committed were we to condone the dismissal with prejudice of an action against a party for failing to obey an earlier order in the matter which was erroneous *ab initio*. Judge Collier's order of 7 June 1979 is, therefore, vacated.

Defendants, appellants in this Court, argue in their new brief that plaintiff failed to appeal from Judge Kivett's order within the time allowed and, therefore, the Court of Appeals was without jurisdiction to consider its validity. However, Rule 16(a) of the Rules of Appellate Procedure provides in pertinent part:

> Review by the Supreme Court after a determination by the Court of Appeals, whether by appeal of right or by discretionary review, is to determine whether there is error of law in the decision of the Court of Appeals. . . . A party who was an appellee in the Court of Appeals and is an appellant in the Supreme Court may present in his brief any questions going to the basis of the Court of Appeals' decision by which he is aggrieved, and any questions which, pursuant to Rule 28(c), he properly presented for review to the Court of Appeals.

Appellant in this Court was the appellee in the Court of Appeals. The question of appealability of Judge Kivett's order did

not go to the substantive basis of the Court of Appeals' decision and defendants did not properly present the question for review to the Court of Appeals; indeed, defendants, in their Court of Appeals' brief, addressed the issue on the merits. The appealability of the reimbursement order is raised for the first time in defendants' brief to this Court. Clearly, the attempt to have this Court address the issue is violative of the quoted portion of Rule 16(a). We have said before that "The attempt to smuggle in new questions is not approved." *State v. Grundler*, 251 N.C. 177, 187, 111 S.E. 2d 1, 8 (1959); *see also, Falls Sales Co. v. Board of Transportation*, 292 N.C. 437, 233 S.E. 2d 569 (1977). We could, of course, address the issue pursuant to our general supervisory and discretionary powers; due to the novel substantive issue presented by this appeal and discussed above, we decline to do so.

IV.

In conclusion, we affirm the decision of the Court of Appeals insofar as it upholds the denial of defendants' motions for dismissal and summary jugment and finds the entry of the reimbursement order improper. That portion of the lower court's decision remanding the Rule 41(b) dismissal motion to the trial court for a new ruling is reversed. The dismissal of plaintiff's action for failure to comply with the reimbursement order is vacated. On remand to the trial court, plaintiff's suit shall be reinstated for trial.

This cause is remanded to the Court of Appeals with instructions to remand to the trial court for further proceedings consistent with this opinion.

Affirmed in part; Reversed in part and Remanded.

Justice HUSKINS dissenting.

I respectfully dissent from that part of the majority opinion which affirms the decision of the Court of Appeals upholding denial of the defense motion for dismissal pursuant to Rule 12(b)(6) or the defense motion for summary judgment pursuant to Rule 56. Summary judgment was appropriate upon defendants' defense that the parties had entered into a full and final settlement of the claim. The reimbursement order of Judge Kivett was error, but it was error favorable to plaintiff.

It is also my view that the dismissal of plaintiff's action for failure to comply with the reimbursement order was not appealed in time to the Court of Appeals and accordingly the late appeal should have been dismissed in the Court of Appeals.

Plaintiff sued for personal injuries suffered in a collision between her car and the car driven by the male defendant and owned by the female defendant. By their answer, defendants assert that plaintiff is barred from prosecuting this case because she entered into a settlement agreement with defendants' insurance carrier and has been paid $3,394.50 in full settlement of her claim. Defendants therefore moved for dismissal on the pleadings or for summary judgment.

At the hearing on the motions, Shirley Bennett, a claims representative for insurer, testified that she and plaintiff agreed to settle plaintiff's claim for $3,000 over the medical bills. In accordance with that agreement, Bennett testified she mailed a draft and final release to plaintiff on 23 June 1977. Both plaintiff and defendants agreed that the check was originally intended as a full and final payment of all claims. On cross-examination, plaintiff testified: "I agreed to a compromise settlement of my claim for $3,000 plus the outstanding medicals. What Mrs. Bennett said was true about the conversation. After that conversation and the argument settled, Mrs. Bennett sent me a letter that confirmed very briefly our conversation and enclosed the draft and release." Plaintiff further testified she "first refused to settle for $2,000 because I was concerned of other problems. . . . I negotiated from $2,000 up to $3,000."

Plaintiff admitted she received the check for $3,073.50 and a transmittal letter with a release entitled "FULL AND FINAL RELEASE OF ALL CLAIMS." Medical expenses amounting to $321 were paid directly to the treating physician. The record shows that the check was endorsed by plaintiff, deposited in her checking account and cleared on 30 June 1977. Plaintiff further admitted that, although she accepted the check and used its proceeds, she failed to sign and return the release.

According to Mrs. Bennett's testimony, on 26 July 1977 plaintiff telephoned her and informed her that plaintiff had incurred further medical bills and had been in the hospital for surgery by reason of the accident. Bennett testified she told plaintiff that if

she was not satisfied with the settlement "to send everything back." Instead of returning everything as directed, plaintiff returned the release unsigned on 15 August 1977 enclosing therewith her additional medical bills and by telephone informed Shirley Bennett that she had deposited the draft in her bank account.

Plaintiff testified she called Shirley Bennett around the first week in July to tell her there would be additional medical expenses and that Bennett told her to go ahead and cash the draft and send the release back with the additional bills, which she did. Plaintiff's husband testified he also spoke to Bennett and that she told him to keep the draft and send the release back unsigned.

Shirley Bennett denied she ever told plaintiff or her husband to keep the draft and return the release unsigned. She testified that plaintiff understood the payment of $3,000 plus medicals was in full and complete settlement of her claim; otherwise, the release would not have been entitled "FULL AND FINAL RELEASE OF ALL CLAIMS."

On 4 April 1979, Judge Kivett denied motions of defendants to dismiss and for summary judgment but ordered plaintiff to reimburse defendants' insurer the sum of $3,073.50 paid to her plus $320 paid to her doctor. Plaintiff did not appeal from this order and did not make the reimbursement as ordered. On 3 May 1979, defendants moved that plaintiff's action be dismissed with prejudice for failure to comply with the reimbursement order of Judge Kivett. Responding to that motion, plaintiff filed an affidavit that she did not have and had been unable to borrow sufficient funds to comply with the order. The motion was heard by Judge Collier on 7 June 1979, and he entered an order dismissing plaintiff's action unless, within ten days, she complied with Judge Kivett's reimbursement order. Plaintiff did not comply and her action was subsequently dismissed.

She appealed  to the Court of Appeals and that court reversed with Clark, J., dissenting. The Court of Appeals held that Judge Kivett's reimbursement order was "invalid" and also denied cross-assignments by defendants that the trial court erred in denying the motions to dismiss and for summary judgment. The majority said a genuine issue of material fact does exist and the trier of fact "must determine whether the payment to plaintiff constituted a full settlement of her claim or was an advance

or partial payment. There are also the issues of fact relating to negligence which are raised by plaintiff's complaint. Denial of the motion to dismiss was proper, as the complaint does state a claim upon which relief can be granted." 47 N.C. App. at 134, 266 S.E. 2d at 741. In view of Judge Clark's dissent, defendants appealed to this Court as of right.

It is my view that the Court of Appeals erred in vacating Judge Collier's order of 7 June 1979 dismissing plaintiff's action for failure to comply with Judge Kivett's order of 2 April 1979 and in remanding defendants' Rule 41(b) motion for a new ruling. This ruling is erroneous because plaintiff did not appeal within the time allowed by law from Judge Kivett's reimbursement order which affected "a substantial right" of plaintiff. *See* G.S. 1-277(a); G.S. 7A-27(d). Plaintiff's notice of appeal from that order was not filed until 18 June 1979, long after the ten days allowed by G.S. 1-279(c) had expired. Of course, as the majority here indicates, Judge Collier could not overrule Judge Kivett. The reimbursement order thus became final. The appeal should be dismissed.

The principal grounds for my dissent, however, are not procedural. Rather, it is my view that the Court of Appeals erred in upholding Judge Kivett's denial of defendants' Rule 12(b)(6) motion to dismiss or, in the alternative, defendants' Rule 56 motion for summary judgment based on the compromise settlement agreement between the parties. Judge Kivett erred in ordering plaintiff to return the money paid to her by defendants' insurer in order to allow her to proceed with her action. This was error favorable to plaintiff. It gave her a chance to proceed in an action she had already settled.

It is quite obvious that plaintiff negotiated a complete settlement of her claim and received a settlement draft in the amount agreed upon. She is bound by her admission to that effect. Thereafter, but before depositing the draft in her checking account, she noticed a lump in her chest which, according to her testimony, was an injury which she had not contemplated at the time she negotiated the settlement. Nevertheless, she proceeded to deposit the settlement checks and accept the benefits of the settlement. She is now estopped to take a contrary position. She cannot have her cake and eat it too. The factual dispute about

whether the insurance agent told plaintiff to keep the money sometime in July 1977 after the check was cashed is of no consequence to the resolution of the suit. Plaintiff admits a full settlement had already been agreed upon and entered into before that dispute arose.

The check was not an advance or a partial payment, and G.S. 1-540.3 has no application here. The check for $3,073.50 was mailed to plaintiff by the insurance carrier for defendants with a "full and final settlement" release attached. No rational mind could have thought they were intended as an "advance or partial payment" on plaintiff's claim. The majority opinion from which I dissent permits plaintiff, *by her unilateral action alone*, to convert the check and closing papers intended to consummate a final settlement into an "advance or partial payment" controlled by G.S. 1-540.3. This permits fraud, encourages perjury and subverts the law as I understand it. For the reasons stated, I maintain that G.S. 1-540.3 has no application to this case. The admissions of plaintiff speak far louder than a signed form release.

If plaintiff became dissatisfied with the final settlement to which she had agreed, then it was her duty "to send everything back," decline to consummate the settlement previously agreed upon, and carry her case to the jury—all of which she had a perfect right to do. This right terminated the day she cashed the check which she admits was intended as a final settlement of the claim.

The majority holding in this case will put an end to settlements by mail. Hereafter, no defendant and no liability insurance carrier will ever part with a check or draft in settlement of a claim unless a properly signed final release is simultaneously or first delivered in exchange for it. Out-of-court settlement and compromise should be encouraged as opposed to perjury and fraud in court.

I vote to dismiss the appeal or, in the alternative, to reverse and remand for entry of summary judgment for defendants.

Justices COPELAND and BRITT join in this dissent.