IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1057

Filed: 31 December 2020

Alamance County, Nos. 16 CRS 3031, 52717-19; 17 CRS 2068

STATE OF NORTH CAROLINA

v.

JUAN ANTONIO PEREZ

Appeal by Defendant from judgments entered 8 November 2018 by Judge Paul Jones, order entered 13 November 2018 by Judge Robert Hobgood, and order entered 4 March 2019 by Judge Rebecca Holt in Superior Court, Alamance County. Heard in the Court of Appeals 11 August 2020.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Tamara M. Van Pala, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Daniel K. Shatz, for Defendant-Appellant.*

McGEE, Chief Judge.

Juan Antonio Perez ("Defendant") appeals from judgments entered upon his guilty pleas to second-degree rape and forcible sex offenses, second-degree kidnapping, assault on female, assault by strangulation, obstruction of justice, and intimidating a witness. Defendant appeals by writ of certiorari the trial court's imposition of lifetime satellite-based monitoring ("SBM"). We hold that the SBM order is unconstitutional as applied to Defendant, and we reverse the trial court's

order imposing lifetime SBM. Defendant also appeals by writ of certiorari the trial

court's imposition of duplicative court costs and we reverse the trial court's imposition

of court costs in one of the judgments against Defendant.

## I.     Factual and Procedural History

At trial, D.M.[1] testified that she and Defendant lived together for around nine

months while engaged in a dating relationship. D.M. testified that after an argument

on the morning of 28 May 2016, D.M. tried to leave their apartment and asked

Defendant for her car keys. Defendant "chucked" the keys at D.M.'s face, which

caused a bruise on her cheek. Defendant then restrained D.M. and strangled her

until she lost consciousness. After Defendant lightened his grip on her throat, D.M.

screamed for help, which caused Defendant to intensify the attack by grabbing her

hair and pinning her to the floor. Defendant threatened D.M. and repeatedly banged

her head against the floor holding her car key against her neck.

Defendant then ordered D.M. to stay in the bedroom, and removed all of the

electronics out of the room that could access the internet. Defendant went into the

living room and returned hourly to check whether D.M. had moved. D.M. struggled

to breath and felt "a crackling" in her neck, and asked Defendant to go to the

emergency room. On the way to the hospital, Defendant told D.M. that "if she

show[ed] any indication that it was him, he would kill [her] in front of everyone at

---

[1] To protect her privacy, we refer to the complainant as "D.M." *See State v. Gordon*, 248 N.C. App. 403, 404, 789 S.E.2d 659, 661, fn1 (2016).

the hospital." At the Alamance Regional Hospital emergency room, Defendant told the nurse D.M. was walking "up the stairs of my apartment and tripped on the steps and landed on the metal rail and fell directly on [her] neck." A CT scan showed damage to the soft tissue of D.M.'s trachea. Defendant remained with D.M. throughout her time at the hospital. D.M. was given pain medication at the hospital and was prescribed additional pain medication. After D.M. was released from the hospital, Defendant and D.M. returned to the apartment.

Defendant awoke D.M. and gave her an additional dosage of pain medication and she returned to sleep. Several hours later, Defendant awoke D.M. and raped D.M. vaginally and anally for over five hours. After Defendant left for work on 31 May 2016, D.M. called the police and sought medical help.

Defendant was arrested and indicted for second-degree forcible rape, second-degree forcible sexual offense, second-degree kidnapping, obstruction of justice, intimidating a witness, assault by strangulation, and assault on a female. Defendant was tried during the 5 November 2018 Criminal Session of Superior Court, Alamance County.

In addition to D.M.'s testimony, the State presented evidence in the form of letters and phone call recordings that Defendant sought to persuade both D.M. and Defendant's ex-wife from testifying for the State. After four days of trial, Defendant pled guilty to all charges on 8 November 2018.

### A.     Sentencing Hearing on 8 November 2018

The trial court consolidated the charges of second-degree kidnapping, obstruction of justice, intimidating a witness, assault by strangulation, and assault on a female, imposing an active sentence of 24 to 41 months and entering $7,642.50 in court costs in Case No. 16 CRS 052718.  The trial court consolidated the second-degree forcible rape and second-degree forcible sexual offense charges and imposed a consecutive term of 80 to 156 months with $2,062.50 in court costs in Case No. 16 CRS 052719.  The trial court ordered that Defendant submit at reasonable times to warrantless searches by a probation officer, meaning "post conviction supervision for purposes specified by [the trial court] and reasonably related to post release supervision or by [the trial court]."

### B.     Sex Offender Registration Hearing on 13 November 2018

The trial court held a hearing on 13 November 2018 and ordered Defendant to register as a sex offender for the remainder of his natural life.   At the hearing, Defendant's trial counsel gave the following oral notice of appeal:

> And, Your Honor, after the trial and plea, we -- the judge did make those rulings and we left the court.  My client did want, and we're still within our ten days, just to give notice of appeal.  But that's just a matter I wanted to put on the record, that he's giving notice of appeal . . . .

 The trial court also scheduled a SMB hearing.

### C.     SBM Hearing on 4 March 2019

The trial court held a hearing on the reasonableness of SBM under the Fourth Amendment on 4 March 2019. At the SBM hearing, the State presented testimony from Brady Cox ("Cox"), a probation and parole officer who worked with sex offenders in Alamance County. Cox testified to the operation of the SBM equipment, specifically the ET-1 tracker and bracelet, and his understanding of the SBM program. He stated that the ET-1 tracker is worn on an offender's ankle and comes with a beacon located at the offender's residence. Cox explained that the tracker communicates with satellites and cellular towers to track an offender's movements within 100 feet, is waterproof up to ten or twelve feet, and is about an inch and one-half wide, three inches tall, and two inches thick. Cox also testified that the tracker requires a total of two hours recharging time per day.

With respect to the nature of the SBM monitoring, Cox testified that the supervising officer would receive an alert if an offender enters a restricted zone, which includes schools, nurseries, and day care facilities. Upon receiving an alert that an offender was in a restricted area or that the tracking device went into error mode, Cox testified that a supervising officer may call the offender to determine what they were doing at the time of the alert or error message, or dispatch a probation officer to check on the offender in person. He also stated that some probationers on the sex offender registration are not subject to SBM monitoring.

Cox further testified that he performed a STATIC-99 assessment for Defendant, explaining that the STATIC-99 "determines the risk for reoffending of an offender based on a ten question scale." Cox testified that Defendant scored a 4 on the assessment, which ranks as an above average risk of reoffending.

In closing, the State addressed the reasonableness of the SBM search under the totality of the circumstances under *Grady v. North Carolina* ("*Grady I*"), 575 U.S. 306, 191 L. Ed. 2d 459 (2015). The State argued that "we've proven that the factors on the hardship the monitoring represents, [Defendant] can do any, pretty much anything except go below 12 feet of water[,]" and that the monitoring program did not infringe on Defendant's right to privacy. The trial court directed the State to address "how the monitoring either helps prevent recidivism or allows the public interest in basically having that information available to law enforcement[.]" The State declined to speak on the issue, apart from citing *Doe v. Bredesen*, 507 F.3d 998 (6th Cir. 2007), in stating "the monitoring system has a deterrent effect on would-be reoffenders."

Defendant's trial counsel argued that while there was a public interest for safety "to prevent individuals from going out and doing it again," the imposition of SBM was not mandatory for every individual convicted of a sexual offense. Defendant's trial counsel referenced Cox's testimony that some individuals that are not subject to SBM are still monitored periodically to ensure compliance. Because

Defendant had already been ordered to lifetime sex offender registration, Defendant's trial counsel argued that Defendant should not be subject to lifetime SBM.

The trial court found that the State had presented evidence related to the effect and obtrusiveness of SBM monitoring through use of an ankle monitor, and that it did not restrict the activities of the wearer, except with regard to a long period of submerging under water. The trial court further found that there was a strong interest in protecting the public from recidivism, and that the restriction of wearing an ankle monitor was not an unreasonable search and did not violate the Fourth Amendment when considered against the public interest. Accordingly, the trial imposed a requirement of lifetime SBM.

## II.    Analysis

Defendant asserts that the trial court erred in ordering that Defendant enroll in lifetime SBM upon his release from prison because the State failed to meet its burden of proving the imposition of lifetime SBM is a reasonable search under the Fourth Amendment. *See Grady I*, 575 U.S. at 310, 191 L. Ed. 2d 459.

Additionally, Defendant contends that the trial court erred by entering duplicative court costs. Defendant gave oral notice of appeal at the 13 November 2018 hearing but did not specifically raise the issue of court costs, nor did he later file a written notice of appeal.

### A.    Petition for Writ of Certiorari

Defendant filed a petition for a writ of certiorari on 27 January 2020 seeking review of the order imposing lifetime enrollment in SBM, as well as the imposition of alleged duplicative court costs.

Because of the civil nature of SBM hearings, a defendant must file a written notice of appeal from an SBM order, pursuant to N.C. R. App. P. 3(a). *State v. Brooks*, 204 N.C. App. 193, 194-95, 693 S.E.2d 204, 206 (2010) (holding that oral notice of appeal from an SBM order does not confer jurisdiction on this Court). This Court, however, is authorized to issue a writ of certiorari "to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]" N.C. R. App. P. 21(a)(1). In the present case, because Defendant's oral notice of appeal was insufficient to confer jurisdiction on this Court under Rule 3, in our discretion, we allow Defendant's petition for writ of certiorari to review the lifetime SBM order.

As to the issue of court costs, N.C. R. App. P. 4(a) provides that a defendant may appeal from an order or judgment in a criminal action by (1) "giving oral notice of appeal at trial," or (2) "filing notice of appeal with the clerk of superior court and serving copies thereof upon all adverse parties within fourteen days after entry of the judgment[.]" Defendant concedes that the oral notice of appeal at the 13 November 2018 hearing was legally ineffective because it was not given *at trial*. As proper and timely notice of appeal is jurisdictional, we must dismiss Defendant's

appeal. *In re I.T.P-L.*, 194 N.C. App. 453, 459, 670 S.E.2d 282, 285 (2008). Defendant's right to appeal was lost through no fault of Defendant but rather due to the failure of Defendant's trial counsel to give proper notice of appeal. We therefore exercise our discretion under Rule 21(a)(1) to grant Defendant's petition for writ of certiorari, and proceed to address the merits of Defendant's arguments. *See State v. Holanek*, 242 N.C. App. 633, 640, 776 S.E.2d 225, 232 (2015) (allowing certiorari review after noting oral notice of appeal given in open court six days after trial was not notice given "at trial" for purposes of Rule 4 and was therefore ineffective).

## B. Lifetime SBM

This case is another in a series of appeals from SBM orders since the United States Supreme Court held in *Grady I* that the imposition of SBM constitutes a warrantless search within the meaning of the Fourth Amendment and necessitates an inquiry into reasonableness under the totality of the circumstances. 575 U.S. at 310, 191 L. Ed. 2d at 462. Our Supreme Court has since addressed the question in *State v. Grady*, 372 N.C. 509, 831 S.E.2d 542 (2019) ("*Grady III*"), holding that the imposition of mandatory lifetime SBM "is unconstitutional in its application to all individuals in the same category as [the] defendant—specifically, individuals who are subject to mandatory lifetime SBM based solely on their status as a statutorily defined 'recidivist' who have completed their prison sentences and are no longer supervised by the State[.]" *Id.* at 522, 831 S.E.2d at 553. Although our Supreme

Court limited the facial aspect of its holding to that singular category of recidivist defendants, it did so after engaging in a reasonableness analysis under the totality of the circumstances as required by the United States Supreme Court in *Grady I*.

Since our Supreme Court's holding in *Grady III*, this Court has applied the reasonableness analysis under the totality of the circumstances to non-recidivists in SBM appeals in accordance with *Grady I*. *See State v. Gordon*, ___ N.C. App. ___, 840 S.E.2d 907 (applying the reasonableness analysis employed in *Grady III* to a defendant convicted of an aggravated offense and subject to lifetime SBM as a result), *temp. stay allowed*, ___ N.C. ___, 839 S.E.2d 351 (2020); *State v. Griffin*, ___ N.C. App. ___, 840 S.E.2d 267 ("*Grady III* offers guidance as to what factors to consider in determining whether SBM is reasonable under the totality of the circumstances."), *temp. stay allowed*, ___ N.C. ___, 838 S.E.2d 460 (2020) ("*Griffin II*"). Although our Supreme Court has issued temporary stay orders for *Gordon* and *Griffin II*, this Court's reasoning in those cases remains instructive as the most recent published decisions of this Court addressing *Grady III*'s application to defendants convicted of an aggravated offense and outside the recidivist context.

Defendant is an aggravated offender subject to mandatory lifetime SBM following his release from incarceration, placing his circumstances outside of the limited facial holding of *Grady III*. Accordingly, as this Court did in *Griffin II*, we employ *Grady III* as a roadmap, "reviewing Defendant's privacy interests and the

nature of SBM's intrusion into them before balancing those factors against the State's interests in monitoring Defendant and the effectiveness of SBM in addressing those concerns." *Griffin II*, ___ N.C. App. at ___, 840 S.E.2d at 273.[2]

### 1.    *Privacy Interest*

Because the trial court ordered Defendant to submit to lifetime sex offender registration and post-release supervision upon his release from prison, Defendant has a diminished expectation of privacy in some respects. But despite the lessened expectation in the privacy of his address or matters material to his voluntary participation in certain activities, Defendant's expectation of privacy "is not automatically and forever 'significantly diminished' under the Fourth Amendment for all purposes." *Grady III*, 372 N.C. at 534, 831 S.E.2d at 561. Although the length of post-release supervision is unclear based on the record, Defendant's "constitutional privacy rights, including his Fourth Amendment expectations of privacy, [will] have been restored" at some point before the end of the lifetime SBM order. Accordingly, Defendant will enjoy "appreciable, recognizable privacy interests that weigh against

---

[2] We note that although Defendant did not object at the SBM hearing to the imposition of SBM, the reasonableness of the search under the Fourth Amendment is preserved for appellate review where, as here, the State initiated consideration of a constitutional issue and the trial court addressed it. *State v. Lopez*, 264 N.C. App. 496, 515, 826 S.E.2d 498, 510 (2019) (holding that where "the State initiated the *Grady* discussion and argued imposition of SBM on [the d]efendant was a reasonable Fourth Amendment search[,]" the *Grady* issue was preserved for appellate review, despite the defendant's failure to object).

the imposition of SBM for the remainder of" Defendant's lifetime. *Griffin II*, ___ N.C. App. at ___, 840 S.E.2d at 274.

### 2.     *Intrusive Nature of SBM*

*Grady III* made several observations concerning the intrusive nature of SBM, and those same observations generally apply here. For example, the physical qualities of the monitoring device used in this case appear largely similar to those in *Grady III*, and thus meaningfully conflict with Defendant's physical privacy rights. *Grady III*, 372 N.C. at 535-37, 831 S.E.2d at 562-63. As recognized in *Grady III*, SBM's ability to track Defendant's location is "uniquely intrusive," *id.* at 537, 831 S.E.2d at 564 (citation and quotation marks omitted), and thus weighs against the imposition of SBM.

In this case, unlike in *Grady III*, "we are unable to consider 'the extent to which the search intrudes upon reasonable privacy expectations' because the search will not occur until Defendant has served his active sentence." *Gordon*, ___ N.C. App. at ___, 840 S.E.2d at 912 (quoting *Grady III*, 372 N.C. at 527, 831 SE.2d at 557). Additionally, the State has not presented any evidence regarding "the level of intrusion as to the information revealed under the satellite-based monitoring program, nor has it established that the nature and extent of the monitoring that is currently administered, and upon which the present order is based, will remain

unchanged by the time that Defendant is released from prison." *Id.* at ___, 840 S.E.2d at 912-13.

### 3.     State's Interest

Our Supreme Court held in *Grady III* that "the extent of a problem justifying the need for a warrantless search cannot simply be assumed; instead, the existence of the problem and the efficacy of the solution need to be demonstrated by the government." *Grady III*, 372 N.C. at 540-41, 831 S.E.2d at 566. "The State has the burden of coming forward with some evidence that its SBM program assists in apprehending sex offenders, deters or prevents new sex offenses, or otherwise protects the public." *Id.* at 543-44, 831 S.E.2d at 568. "The State's failure to produce any evidence in this regard 'weighs heavily against a conclusion of reasonableness.' " *Griffin II*, ___ N.C. App. at ___, 840 S.E.2d at 275 (quoting *Grady III*, 372 N.C. at 543, 831 S.E.2d at 567 (brackets omitted)).

During the SBM hearing, the trial court directed the State to address "how the monitoring either helps prevent recidivism or allows the public interest in basically having that information available to law enforcement[.]" The State declined to speak on the issue, apart from citing *Doe v. Bredesen*, 507 F.3d 998 (6th Cir. 2007) in stating "the monitoring system has a deterrent effect on would-be reoffenders." However, these statements are not evidence, and the arguments advanced by the State at the hearing were simply conclusory legal arguments untethered to facts or documentary

13

evidence.  *See State v. Collins*, 345 N.C. 170, 173, 478 S.E.2d 191, 193 (1996) (explaining that "it is axiomatic that the arguments of counsel are not evidence").

As explained above, the State's interest in monitoring Defendant by SBM during post-release supervision is already accomplished by a mandatory condition of post-release supervision imposing that very thing. *See* N.C. Gen. Stat. § 15A-1368.4(b1)(7).  The State failed to carry its burden to produce evidence that the lifetime SBM imposed in this case is effective to serve legitimate interests.

*4.      Reasonableness of SBM Under the Totality of the Circumstances*

Defendant has appreciable privacy interests in his person, his home, and his movements—even if those interests are diminished for the period of post-release supervision while he is also subject to SBM.  Those privacy interests are substantially infringed by the SBM order imposed in this case.  Taken together, these factors weigh strongly against the conclusion that the warrantless search for the remainder of Defendant's life is reasonable, and they are not outweighed by evidence of a legitimate interest served by monitoring Defendant given the State's failure to show the efficacy of lifetime SBM in serving the State's legitimate interests.  Under the totality of the circumstances, the order of lifetime SBM in this case constitutes an unreasonable warrantless search in violation of the Fourth Amendment.  We therefore hold, consistent with the balancing test employed in *Grady III*, that the

14

imposition of SBM as required by the trial court's order is unconstitutional as applied to Defendant and must be reversed.

### C. Duplicative Court Costs

This Court reviews Defendant's disputed Criminal Bill of Costs under the writ of certiorari pursuant to N.C. Gen. Stat. § 15A-1444(g). Defendant's argument presents a question of statutory interpretation under N.C. Gen. Stat. § 7A-304 that this Court reviews *de novo*. *State v. Rieger*, 267 N.C. App. 647, 649, 833 S.E.2d 699, 700 (2019).

In *Rieger*, the defendant was stopped for driving too closely and police noticed "various illegal drugs and drug paraphernalia." *Id.* at 647, 833 S.E.2d at 700. The defendant was arrested for and convicted of possession of marijuana and possession of marijuana paraphernalia. *Id.* The trial court entered two separate judgments and assessed court costs in each judgment. *Id.* at 648, 833 S.E.2d at 700. This Court held that when multiple criminal charges arise from the same underlying event or transaction and are adjudicated together in the same hearing or trial, they are part of a single "criminal case" for the purposes of N.C. Gen. Stat. § 7A-304(a). *Id.* This holding was centered on this Court's belief that "the intent of the General Assembly when it chose to require court costs 'in every criminal case' was to have those costs be proportional to the costs that this 'criminal case' imposed on the court system." *Id.* at 652, 833 S.E.2d at 703.

In the present case, all of Defendant's charges arose from the same underlying event and were adjudicated together at the same trial, making them part of a single "criminal case" for the purposes of N.C. Gen. Stat. § 7A-304(a). As shown by the itemized bills of cost, duplicative assessments of several categories of court costs were imposed in Case Nos. 16 CRS 052718 and 16 CRS 052719. This duplicative assessment of costs was error. In accordance with this Court's reasoning in *Rieger*, including the determination that the General Assembly's intent was to require costs proportional to the costs imposed on the court system, we vacate the duplicative entry of court costs in 16 CRS 052719.

## III.   Conclusion

For the foregoing reasons, we hold that the State has failed to meet its burden of establishing that lifetime SBM of Defendant following Defendant's release from prison is a reasonable search, and we therefore reverse the trial court's order. We further hold that the trial court erred by assessing duplicative court costs and we vacate the imposition of costs in Case No. 16 CRS 052719 and remand for entry of a new judgment that does not include court costs.

REVERSED IN PART; VACATED AND REMANDED IN PART.

JUDGE COLLINS concurs.

JUDGE TYSON dissents with separate opinion.

.

16

TYSON, Judge, dissenting.

Defendant failed to preserve or to carry his burden on appeal to show reversible error occurred during his *Grady* hearing or in his criminal bill of costs in both judgments against him. Defendant failed to file a notice of appeal from the imposition of SBM as is required under North Carolina Rule of Appellate Procedure 3 to invoke this Court's appellate jurisdiction and review. *See State v. Brooks*, 204 N.C. App. 193, 693 S.E.2d 204 (2010) (requiring written notice of appeal filed under N.C. R. App. P. 3 for review of SBM orders). As such, his challenge to the imposition of SBM is properly dismissed.

Defendant filed a petition for writ of certiorari to invoke this Court's jurisdiction and to seek appellate review of the civil order imposing his lifetime enrollment in SBM. To trigger this Court's discretion to allow the petition and issue the writ, our Supreme Court has held Defendant's "petition for the writ [of certiorari] must show merit or that error was probably committed below." *State v. Grundler*, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959) (citation omitted). I respectfully dissent from the majority opinion's allowing Defendant's no merit petition for writ of certiorari and their analysis of the SBM order.

Defendant's criminal bill of costs contained costs duly assessed from judgments that were not a part of a "single criminal case." *State v. Rieger*, 267 N.C. App. 647, 648, 833 S.E.2d 699, 700 (2019) (internal quotation marks omitted). I also

respectfully dissent from the majority opinion's allowing Defendant's petition for writ of certiorari and its analysis of the purported duplicative costs.

## I. No Preservation of Constitutional Error

Appellate Rule 10 mandates that in order for Defendant to "preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1).

It is undisputed Defendant failed to raise any constitutional challenge or otherwise preserve this constitutional claim in violation of Appellate Rule 10 at any point during his sentencing hearing. Asserted constitutional errors not raised, argued, and ruled upon before the trial court cannot be raised for the first time on appeal. Defendant's challenge is no different from any "other defendants whose constitutional arguments were barred on direct appeal because they were not preserved for appellate review." *State v. Bishop*, 255 N.C. App. 767, 769-70, 805 S.E.2d 367, 369 (2017); s*ee State v. Garcia*, 358 N.C. 382, 410-11, 597 S.E.2d 724, 745 (2004) (capital murder); *State v. Roache*, 358 N.C. 243, 274, 595 S.E.2d 381, 402 (2004) (capital murder); *State v. Haselden*, 357 N.C. 1, 10, 577 S.E.2d 594, 600 (2003) (capital murder).

The majority's opinion asserts the reasonableness of the search under the Fourth Amendment is preserved for appellate review pursuant to *State v. Lopez*, 264 N.C. App. 496, 515, 826 S.E.2d 498, 510 (2019), because "the State initiated the *Grady* discussion and argued the imposition of SBM on [the d]efendant was a reasonable Fourth Amendment search." The majority opinion's reliance on *Lopez* is misplaced. The opinion in *Lopez* and reliance thereon violates this Court's binding precedent from our Supreme Court and this Court.

This Court is bound by the opinions and precedents of our Supreme Court. *See Mahoney v. Ronnie's Road Service*, 122 N.C. App. 150, 153, 468 S.E.2d 279, 281 (1996) ("it is elementary that we are bound by the rulings of our Supreme Court"), *aff'd per curiam*, 345 N.C. 631, 481 S.E.2d 85 (1997). "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). "We are without authority to overturn the ruling of a prior panel of this Court on the same issue." *Poindexter v. Everhart*, __ N.C. App. __, __, 840 S.E.2d 844, 849 (2020) (citation omitted).

In *State v. Hart*, our Supreme Court warned of potential dire consequences if our State's courts do not uniformly apply the Rules of Appellate Procedure:

> Fundamental fairness and the predictable operation of the
> courts for which our Rules of Appellate Procedure were

designed depend upon the consistent exercise of this authority. Furthermore, inconsistent application of the Rules may detract from the deference which federal habeas courts will accord to their application. Although a petitioner's failure to observe a state procedural rule may constitute an adequate and independent state ground[] barring federal habeas review a state procedural bar is not adequate unless it has been consistently or regularly applied. Thus, if the Rules [of Appellate Procedure] are not applied consistently and uniformly, federal habeas tribunals could potentially conclude that the Rules are not an adequate and independent state ground barring review. Therefore, it follows that our appellate courts must enforce the Rules of Appellate Procedure uniformly.

*State v. Hart*, 361 N.C. 309, 317, 644 S.E.2d 201, 206 (2007) (internal citations and quotation marks omitted).

## II. No Showing of Merit

Defendant's arguments and status does not fall within the category of defendants at issue in *State v. Grady*, 372 N.C. 509, 831 S.E.2d 542 (2019) ("*Grady III*"), recidivists who have completed their sentence and are no longer under any State supervision.

Defendant was sentenced to post-release supervision. As reasoned in *Grady III*, *s*uch a search is reasonable during post-release supervision because a defendant has a diminished expectation of privacy during this period. *Id.* at 522, 831 S.E.2d at 553 (declining to "address the application of SBM" beyond "individuals who are subject to mandatory lifetime SBM based solely on their status as a statutorily defined 'recidivist' who have completed their prison sentences and are no longer

supervised by the State through probation, parole, or post-release supervision"); *see State v. Hilton*, __ N.C. App. __, __, 845 S.E.2d 81, 84 (2020) ("the imposition of SBM *during* the period of his post-release supervision is reasonable. During this period, Defendant's expectation of privacy is very low.") (emphasis original).

By striking the entire order, the majority's opinion improperly extends *State v. Griffin*, __ N.C. App. __, 840 S.E.2d 267, *temp. stay allowed*, 374 N.C. 265, 838 S.E.2d 460 (2020). In *Griffin*, the defendant challenged his order of SBM following *completion* of his court ordered post release supervision. *Id*. at __, 840 S.E.2d at 270. *Griffin* properly recognizes SBM as a special needs search during this period of lowered expectations of privacy. *Id* at __, 840 S.E.2d at 274 (rights are "appreciably diminished during his [] term of post-release supervision, that is not true for the remaining [term] of SBM imposed [following the termination of post-release supervision]").

Our General Assembly enacted N.C. Gen. Stat. § 14-208.40A(c), which made the legislative findings and policy decision to mandate defendants convicted of sexually violent offenses or aggravated offenses be subjected to Satellite Based Monitoring. N.C. Gen. Stat. § 14-208.40A(c) (2019). This legislative policy and statute has been tested and survived constitutional scrutiny. *Grady v. North Carolina*, 575 U.S. 306, 310, 191 L. Ed. 2d 459, 462 (2015).

Here, the trial court properly found the repetitive and aggravated offenses to which Defendant plead guilty, second degree rape and forcible sex offenses, are reportable convictions pursuant to N.C. Gen. Stat. § 14-208.6 (2019). Without any argument or objection by Defendant, while in open court and in the presence of the Defendant and his counsel, the trial court made the following findings of fact under the statute, to comply with the statutory mandate:

> [The Court]: In this case, the State has presented evidence related to the effect and obtrusiveness or unobtrusiveness of satellite based monitoring which includes the size of the anklet that's worn, the fact that it can be covered with a pair of pants, the fact that it does not restrict the activities of the wearer
>
>  . . . .
>
> The Court does note that, that the person wearing it is not restricted from performing any number of activities, that there are not jobs that would be restricted just by virtue of the fact that the person is wearing a anklet.
>
> That, and I do find that the public has a strong interest in the, protecting the public from recidivism, and that the restriction of wearing an ankle bracelet or ankle monitor is not such that it violates the Fourth Amendment when considered, the restrictiveness when considered against the public interest.

Neither Defendant nor Defendant's counsel asserted any objections or raised constitutional challenge in response to the State's showing and arguments or to the trial court's findings at any point during this hearing. Defendant's counsel questioned witnesses concerning problems with tracking, asking what activities a

monitored individual could and could not do, and how often the bracelet had to be recharged.

Defendant's counsel filed no motion, objection, or asserted any argument the SBM imposed upon Defendant was an unlawful search. Having failed to object at his sentencing hearing, Defendant unlawfully attempts to raise a constitutional violation for the first time on appeal. *Bishop*, 255 N.C. App. at 770, 805 S.E.2d at 370. Defendant has failed to demonstrate any prejudice to merit issuance of the writ. *Grundler*, 251 N.C. at 189, 111 S.E.2d at 9.

Even if the trial court failed to hold an extended *Grady* hearing to make further "reasonableness" findings of lifetime SBM for Defendant *ex mero moto*, that decision is not fatal to vacate the SBM order. In the absence of any demand or objection from Defendant or showing of merit, both his petition for writ of certiorari to invoke jurisdiction to remediate his failure to comply with Appellate Rule 3, or to invoke Appellate Rule 2 to excuse Defendant's failure to comply with Appellate Rule 10 are both wholly without merit and properly denied. *See Bishop,* 255 N.C. App. at 770, 805 S.E.2d at 370; *State v. Campbell*, 369 N.C. 599, 603, 799 S.E.2d 600, 602 (2017).

## III. Improper Disposition

The majority's opinion also erroneously reverses the trial courts SBM order. Under *State v. Bursell*, presuming the merits of Defendant's assertions were properly reached, and the lawful disposition was to vacate, our Supreme Court held the correct

disposition is to vacate the order without prejudice to allow the State to refile another SBM application. *State v. Bursell*, 372 N.C. 196, 201, 827 S.E.2d 302, 306 (2019). *Bursell* controls the proper disposition upon remand when an SBM order is vacated.

## IV. Court Costs

The majority's opinion erroneously concludes the charges arose from the same underlying event and were adjudicated together at the same trial, making them part of a single "criminal case" for the purposes of N.C. Gen. Stat. § 7A-304(a) (2019). In *Rieger*, cited in the majority's opinion, our Court held:

> [W]hen criminal charges are separately adjudicated, court costs can be assessed in the judgment for each charge—even if the charges all stem from the same underlying event or transaction. This is so because adjudicating those charges independently creates separate costs and burdens on the justice system. . . . When multiple criminal charges arise from the same underlying event or transaction and are adjudicated together in the same hearing or trial, they are part of a single "criminal case" for purposes of N.C. Gen. Stat. § 7A-304. In this situation, the trial court may assess costs only once, even if the case involves multiple charges that result in multiple, separate judgments.

*Rieger*, 267 N.C. App. at 652-53, 833 S.E.2d at 703.

In *Rieger*, the defendant's vehicle was stopped for driving too closely and police noticed "various illegal drugs and drug paraphernalia" therein. *Id.* at 647, 833 S.E.2d at 700. The defendant was arrested for and convicted of possession of marijuana and possession of marijuana paraphernalia. *Id.* The defendant's charges in *Rieger*,

stemmed from the same temporal and an unbroken sequence of events from the initial stop. *Id.* at 647-48, 833 S.E.2d at 700.

The reasoning in *Rieger* is inapposite here. Defendant's indictments for intimidating a witness and obstruction of justice prior to trial, directed towards two separate victims almost five months after the four continuous days of violence in May 2016, are too far attenuated. These charges are not a part of a "single criminal case." *Id.* at 652, 833 S.E.2d at 703. Defendant's petition fails to show any prejudice or, why if granted, how the result would change upon remand. Defendant's petition for writ of certiorari shows no merit. This court should deny Defendant's petition for a writ of certiorari regarding court costs.

## V. Conclusion

Defendant cannot raise constitutional arguments for the first time on appeal. *Bishop*, 255 N.C. App. at 770, 805 S.E.2d at 370. Defendant's petition for writ of certiorari to avoid Rule 3 and invoke jurisdiction is without merit and is properly denied. *Grundler*, 251 N.C. at 189, 111 S.E.2d at 9. His argument for this Court to exercise our discretion to invoke Rule 2 to overcome his failure to comply with Rule 10 is also without merit. *Campbell*, 369 N.C. at 603, 799 S.E.2d at 602.

Defendant's failure to appeal from or to preserve his purported challenge to his SBM order on constitutional grounds mandates dismissal. His constitutional challenge was neither presented, preserved, nor ruled upon by the trial court.

Multiple binding precedents hold Defendant is barred from raising constitutional issues for the first time on appeal. *See Bishop*, 255 N.C. App. at 769-70, 805 S.E.2d at 369; *Garcia*, 358 N.C. at 410-11, 597 S.E.2d at 745; *Roache*, 358 N.C. at 274, 595 S.E.2d at 402; *Haselden*, 357 N.C. at 10, 57 S.E.2d at 600.

Defendant's criminal bill of costs contained costs duly assessed from judgments that were not a part of a "single criminal case." *Rieger*, 267 N.C. App. at 652, 833 S.E.2d at 703. Defendant's petitions for writ of certiorari are without merit and multiple precedents mandate dismissal. On the merits, the trial court's judgments and orders are properly affirmed. I respectfully dissent.