IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-60

No. 533A20

Filed 6 May 2022

STATE OF NORTH CAROLINA

v.

LEWIE P. ROBINSON

Appeal pursuant to N.C.G.S. § 70A-30(2) from the decision of a divided panel of the Court of Appeals, 275 N.C. App. 330 (2020), affirming in part a judgment entered 5 December 2018 by Judge Marvin P. Pope, Jr., in Superior Court, Buncombe County, and remanding for resentencing. Heard in the Supreme Court on 21 March 2022.

*Joshua Stein, Attorney General, by Jessica Macari, Assistant Attorney General for the State.*

*Dylan J.C. Buffum, for defendant.*

HUDSON, Justice.

¶ 1 In *State v. Dew*, this Court determined that "the State may charge a defendant with multiple counts of assault only when there is substantial evidence that a distinct interruption occurred between assaults." 379 N.C. 64, 2021-NCSC-124, ¶ 27. Here, we must apply that principle to the context of a guilty plea, in which the trial court sentenced defendant to separate and consecutive sentences based on several assault charges arising from one assaultive episode. Because the facts presented at the plea

hearing did not establish that a distinct interruption occurred between assaults, we affirm the decision of the Court of Appeals that the trial court lacked a sufficient factual basis to accept defendant's guilty plea. Because we see no basis for rejecting defendant's guilty plea in part, however, we modify the holding of the Court of Appeals by vacating the entire plea arrangement and remanding to the trial court for further proceedings.

## I.    Factual and Procedural Background

### A.  Charges and Guilty Plea

¶ 2    In May 2018, defendant and Leslie Wilson were in a dating relationship in which Wilson became the victim of defendant's domestic violence. On or around the evening of 27 to 28 May 2018, Wilson and defendant were at Wilson's home together when defendant attacked her. Specifically, defendant grabbed Wilson around the neck, punched her several times in the face and chest, and strangled her while holding her down on a bed. When law enforcement arrived, Wilson stated that defendant had held her captive for three days. Wilson sustained severe injuries to her jaw, neck, and chest from the attack, requiring extensive medical treatment. On 4 December 2018, defendant was formally charged with four offenses: assault on a female, violation of a domestic violence protective order (DVPO), assault inflicting serious bodily injury, and assault by strangulation.

¶ 3    On 5 December 2018, defendant's case came on for hearing in Buncombe

County Superior Court. Through his appointed counsel, defendant agreed to plead guilty to each of the four charged offenses. Under the terms of this original plea agreement, the State agreed to consolidate the four offenses into one Class F Felony judgment, with defendant receiving a single active prison sentence of 23–37 months. In establishing the factual basis for defendant's plea, the State described the facts surrounding the charges as follows:

> Your Honor, this occurred on May the 28th, 2018. Officers responded just after midnight that morning . . . to [Wilson's house]. The caller was Ms. Leslie Wilson who is present today, Your Honor. She stated that she'd been held captive by the defendant for three days and there was an active [DVPO] in place.
>
> When officers arrived, Ms. Wilson was present and stated that. . . defendant[ ] had grabbed her around the neck and that while he was choking her she had a taken a box cutter from him. During the assault that occurred over that night, Your Honor, Ms. Wilson was punched a number of times causing a broken jaw and a dislodged breast implant. She also had small cuts on her hands that were consistent with the altercation, as well as bruising around her neck. Ms. Wilson describes that during the strangulation she was unable to breathe and felt like she was going to pass out. She had tenderness about her neck for a few days after. Additionally, she was unable to eat food properly for about six weeks after the assault due to the condition of her jaw, Your Honor.

¶ 4    After defendant's counsel agreed with this factual presentation by the State, the trial court requested to hear directly from Wilson, who was present at the hearing. In response to the trial court asking her to describe the incident, Wilson stated as

follows:

> We were both drinking and he was getting ill, so I dumped all the beer out. Dumped out everything I could find. And then I locked myself in the bathroom. And he broke two doors trying to get to me and he kept telling me to tell him where I had hid the beer. I didn't want to tell him then that I'd poured it out because I was so afraid. But I poured it out, trying to keep him from getting to this point. And then he got after me and I had a box cutter, which I was trying to defend myself at that point, and he held me down on the bed. I actually blacked out twice. And when he was strangling me and told me I needed to learn where the pressure points was, with his elbow on my jawbone and my throat. And then when I got back up I did—I had the box cutter but I was trying—I was scared to death. I thought he was going to kill me. I couldn't even hardly talk.

When the trial court subsequently asked Wilson whether she understood the terms of defendant's plea and why the court should accept the plea, Wilson responded affirmatively and stated she "just want[ed] to close this chapter of [her] life and move on."

¶ 5      Ultimately, addressing defendant's counsel, the trial court stated the following:

> So I'm telling you this, [defense counsel], I'm rejecting the plea the way it is now. I will sentence [defendant] to four consecutive sentences for active time, if you want to renegotiate your plea arrangement. Otherwise, I'll sign off on it, won't take it, and you can take it in front of another judge and see if you can sell this bill of goods to some other person. I'm not going to take it.

The court then took a brief recess to allow the parties to reconvene.

¶ 6        Twenty-four minutes later, the parties returned with a new plea arrangement. Under the new plea arrangement, defendant pleaded guilty to the same four charges as in the original plea arrangement: one count of assault on a female, one count of DVPO violation, one count of assault inflicting serious bodily injury, and one count of assault by strangulation. However, where the original plea agreement consolidated the four offenses into one sentence, the new plea arrangement offered four separate sentences: one Class F felony judgment with an active sentence of 23–37 months; one Class H felony judgment with a consecutive active sentence of 15–27 months; and two consecutive A1 misdemeanor judgments of two 150-day suspended sentences with supervised probation. Notably, the trial court did not solicit further factual statements to support the new plea arrangement; instead, it relied solely on the previous statements from the prosecutor and Wilson. After defendant duly agreed to the plea arrangement, the trial court accepted it and entered judgment accordingly.

**B. Court of Appeals**

¶ 7        On 5 August 2019, defendant filed a petition for writ of certiorari with the North Carolina Court of Appeals pursuant to N.C.G.S. § 15A-1444. Although defendant's petition requested appellate review of four issues, the Court of Appeals, in its discretion, allowed defendant's petition on only one of these issues: whether the trial court had a sufficient factual basis to accept the new plea arrangement and enter separate and consecutive judgments accordingly. Specifically, defendant argued that

the trial court erred when it accepted the new plea arrangement and entered judgment on three assault charges because the factual summary provided by the State and Wilson did not establish more than one assault.

¶ 8        On 15 December 2020, the Court of Appeals filed a divided opinion in which the majority concluded that "there was an insufficient factual basis for [d]efendant's guilty plea." *Robinson*, 275 N.C. App. at 331.

¶ 9        First, the majority noted that by statute, a "judge may not accept a plea of guilty . . . without first determining that there is a factual basis for the plea." N.C.G.S. § 15A-1022(c) (2021). The court observed that such a factual basis may be provided by a statement of facts by the prosecutor, and that a "trial court may also 'consider any information properly brought to its attention in determining whether there is a factual basis for a plea of guilty.' " *Id.* at 334 (quoting *State v. Dickens*, 299 N.C. 76, 79 (1980) (cleaned up)). Further, relying on its own precedent in *State v. Williams*,[1] the majority noted that "in order for a defendant to be charged with multiple counts of assault, there must be multiple assaults. This requires evidence of a distinct interruption in the original assault followed by a second assault." *Robinson*, 275 N.C. App. at 335 (quoting *State v. Williams*, 201 N.C. App. 161, 182 (2009)).

¶ 10        Here, the Court of Appeals majority noted, "the State's summary of the factual

_____

[1] The Court of Appeals opinion was published before this Court's ruling in *State v. Dew*, 379 N.C. 64, 2021-NCSC-124. In *Dew*, the Court clarified the requirements for being charged with multiple counts of assault.

basis for the plea was brief" and "indicated that this was a singular assault, without distinct interruption, during which Wilson was strangled, beaten, and cut." *Robinson*, 275 N.C. App. at 334–35. The majority observed that "nothing in the State's factual summary suggests that there was a distinct interruption that would support multiple assault convictions." *Id.* at 335. Instead, "the prosecutor's language shows that she only referenced a singular assault during her summary of the factual basis for the plea arrangement," using singular language such as "the assault" or "the altercation." *Id.* "Moreover," the majority noted, "Wilson's statement to the trial court at the hearing provided no evidence of a distinct interruption in the assault." *Id.* Finally, the majority stated that "[t]he fact that [d]efendant held Wilson captive for three days does not, alone, compel the conclusion that he committed multiple assaults against Wilson during that period." *Id.* at 336. Given this lack of substantial evidence of a distinct interruption in the assault, the Court of Appeals majority concluded "that [d]efendant has shown than the State did not provide a sufficient factual basis for the trial court to accept his guilty plea and enter judgments on multiple assault charges." *Id.*

¶ 11 Second, because the offense of assault inflicting serious bodily injury (Class F felony) is classified as more severe than the offenses of assault by strangulation (Class H felony) and assault on a female (Class A1 misdemeanor), the Court of Appeals majority concluded that "[d]efendant could only be punished for the offense of assault

inflicting serious bodily injury, and not for the other two assault offenses as well." *Id.* at 338. Specifically, the majority reasoned that "[b]ecause the factual basis for [d]efendant's guilty plea . . . supported just one assault conviction, the trial court was only authorized to enter judgment and sentence [d]efendant for one assault—that which provided for the greatest punishment of the three assault offenses to which [d]efendant pleaded guilty." *Id.*

¶ 12        Finally, relying on this Court's ruling in *State v. Fields*, the Court of Appeals majority concluded that "the appropriate course of action is to arrest judgment on [d]efendant's convictions for assault on a female. . . and assault by strangulation[,]" while affirming defendant's conviction for assault inflicting serious bodily injury. *Robinson*, 275 N.C. App. at 338 (citing *State v. Fields*, 374 N.C. 629, 636–37 (2020)). The majority subsequently remanded the case to the trial court with instructions to arrest these two lesser judgments and to resentence defendant on the remaining charges. *Id.*

¶ 13        Judge Berger dissented. *See id.* at 339 (Berger, J., dissenting). The dissent would have denied defendant's petition for writ of certiorari because, it its view, defendant failed to make the required showing of merit or that error was probably committed below. Specifically, the dissent relied upon this Court's ruling in *State v. Rambert*, 341 N.C. 173 (1995), to conclude that "[d]efendant's separate and distinct actions [during the assaultive episode] are not the same conduct," and therefore that

the trial court did not err in sentencing defendant for separate assaults. *Id.* at 339–40 (Berger, J., dissenting).

¶ 14    In *Rambert*, the defendant was charged and convicted of three separate counts of discharging a firearm into occupied property after firing three shots from a handgun into an occupied car. 341 N.C. at 174–176. In rejecting defendant's claim that this evidence supported only a single conviction, not three, this Court "noted that (1) the defendant employed his thought process each time he fired the weapon, (2) each act was distinct in time, and (3) each bullet hit the vehicle in a different place." *Dew*, 379 N.C. 64, 2021-NCSC-124, ¶ 25 (citing *Rambert*, 341 N.C. at 177).

¶ 15    Applying these *Rambert* factors to the case at bar, the dissent here reasoned that defendant's actions of (1) grabbing Wilson by the neck, (2) punching Wilson in the face and chest, and (3) placing his forearm on Wilson's neck constituted "at least three separate and distinct acts" for which the trial court could properly sentence defendant separately. *Robinson*, 275 N.C. App. at 342–43 (Berger, J., dissenting). Specifically, the dissent noted that defendant's actions during the assaultive episode each required a different thought process, were distinct in time, and resulted in injuries to different body parts. *Id.* at 343 (Berger, J., dissenting). Accordingly, the dissent would have held that the factual showing made at the hearing reasonably supported the trial court's decision to sentence defendant based on three separate assault offenses. *Id.* (Berger, J., dissenting).

## C. Present Appeal

On 19 January 2021, the State filed a notice of appeal with this Court based on the Court of Appeals dissent. In its appeal, the State argues that the trial court properly determined that there was a factual basis for defendant's guilty plea, and therefore that the Court of Appeals majority erred in reversing the trial court's judgment and sentences.

First, the State argues that this Court has not yet identified the applicable standard of review, but that it has made clear that the question before the trial court is limited and the scope of review is narrow. The State contends that the Court of Appeals majority erred in reviewing the factual basis for defendant's guilty plea de novo based on a "statutory interpretation" standard of review. Even if the correct standard of review is de novo, the State contends, "review is limited to a narrower question than what the Court of Appeals majority addressed . . . [because] [t]he test applied by the trial court is merely whether there is some substantive material independent of the plea itself which tends to show guilt. Because the trial court's determination below was "distinctly fact-bound[,]" the State contends, appellate courts must consider it "with respect for [the] trial court['s] discretion."

Second, the State argues that the facts presented to the trial court during defendant's hearing adequately support defendant's guilty plea to three distinct assaults. The State notes that under N.C.G.S. § 15A-1022(c), a trial court "may not

accept a plea of guilty . . . without first determining that there is a factual basis for the plea." The State notes that this determination requires that "some substantive material independent of the guilty plea itself appear of record which tends to show that defendant is, in fact, guilty." *State v. Sinclair*, 301 N.C. 193, 199 (1980).

¶ 19        Here, the State argues, the facts presented at the hearing by the prosecutor and Wilson adequately support the trial court's sentencing under each distinct charge of assault. As reasoned by the Court of Appeals dissent, the State contends that defendant's actions constitute three distinct assaults: (1) grabbing Wilson's neck (assault on a female); (2) punching Wilson in the face and chest (assault inflicting serious bodily injury); and (3) pushing his forearm against Wilson's neck (assault by strangulation). The State argues that these facts "easily clear [*Sinclair's*] threshold of 'some substantive material independent of the plea itself . . . which tends to show' that the defendant committed the crimes charged against him." As such, the State argues that the Court of Appeals majority erred in ruling otherwise.

¶ 20        Third, the State argues that the Court of Appeals majority followed the wrong analytical framework when it determined that only one assault had occurred. Specifically, the State asserts that the majority gave improper weight to the "distinct interruption" standard instead of following this Court's precedent from *State v.*

*Rambert*, 341 N.C. 173, (1995).[2] Under *Rambert*, the State contends that the relevant factors in determining whether a defendant committed one or multiple criminal acts include: (1) whether each action required defendant to employ a separate thought process; (2) whether each act was distinct in time; and (3) whether each act resulted in a different outcome. Under this analysis, the State argues, no "distinct interruption" is required between assaults because defendant attacked Wilson in "at least three different ways," rendering the three assault charges and sentences proper.

Finally, at oral arguments, which took place *after* this Court's ruling in *Dew*, the State argued that even under *Dew's* distinct interruption requirement, sufficient facts were summarized during the hearing to support the defendant's separate sentences. For instance, counsel for the State proffered that Wilson pouring the beer down the sink, locking herself in the bathroom, blacking out twice, or defendant "getting ill" could each reasonably constitute a distinct interruption in the assaultive episode. Further, the State emphasized that Wilson told law enforcement that defendant had held her captive in the home for three days, and that over this extended period of time "there had to have been ebbs and flows in the momentum of the attack—there had to be lapses of time to calm down, to eat, to go to the bathroom."

---

[2] The briefs from both the State and defendant here were filed before the publication of this Court's ruling in *State v. Dew*, 379 N.C. 64, 2021-NCSC-124. *Dew* was published between the filing of the briefs and oral arguments.

As such, the State argued, the trial court had a sufficient factual foundation for defendant's three separate judgments and sentences.

¶ 22      In response, defendant argues that the Court of Appeals majority did not err. Regarding the proper standard of review, defendant asserts that the trial court's ruling on the sufficiency of a factual basis is subject to de novo appellate review because "whether the record shows that there was a sufficient factual basis for the plea is a quintessential question of law[.]" Because the only question following a guilty plea is whether the uncontested facts support each of the elements of each of the charged offenses, defendant argues that "[t]his is no different than appellate review of a motion to dismiss after the close of evidence[,]" which is conducted de novo.

¶ 23      Next, defendant argues that the Court of Appeals ruling was correct on the merits because the facts presented to the trial court did not support entry of judgment on three distinct assaults. Rather, defendant argues that the factual basis provided by the State would have supported any one of the assault charges, but not all three. Defendant particularly notes that the prosecutor's description of the assault repeatedly referred to "the assault" as a singular event, not multiple or distinct attacks, and that Wilson's description of the attack corroborated this singularity. As such, defendant contends, "nothing in the State's recitation would support an inference that three separate assaults occurred[.]"

¶ 24        In alignment with the majority opinion below, defendant argues that to support multiple assault convictions stemming from a single transaction, evidence must establish a distinct interruption in the transaction followed by a separate and distinct assault. "While the *Rambert* Court determined each distinct act of discharging a gun constituted a separate unit of prosecution and supported a separate conviction[,]" defendant asserts, "nothing in *Rambert* suggested assault is defined the same way."

¶ 25        Finally, at oral arguments, defense counsel argued that *Dew's* distinct interruption requirement is controlling and dispositive in this case because the factual summary provided by the State and Wilson at the hearing described the assault as one continuous episode, without any distinct interruptions. Although Wilson reported that defendant had held her captive for three days, defense counsel noted that the hearing statements and the record only described one distinct assaultive episode, not an ongoing attack over the course of three days. Accordingly, defendant contends, the Court of Appeals majority correctly determined that the trial court lacked a sufficient factual basis to sentence defendant on three separate assault convictions.

## II.    Analysis

¶ 26        Now, we must determine whether the trial court had a sufficient factual basis to sentence defendant to three separate and consecutive assault sentences. Under the

distinct interruption requirement established by *Dew*, 379 N.C. 64, 2021-NCSC-124, we hold that it did not, and therefore partially affirm the ruling of the Court of Appeals majority. 2021-NCSC-124. However, because defendant's guilty plea must be accepted or rejected as a whole, rather than piecemeal, we modify the holding of the Court of Appeals by vacating the entire plea arrangement and remanding to the trial court for further proceedings.

### A. Standard of Review

First, we must address the appropriate standard of review. Below, the Court of Appeals majority determined that "[d]efendant raises an issue of statutory construction[,]" and thus applied de novo review. *Robinson*, 275 N.C. App. at 333. On appeal, the State contends that in light of the trial court's limited test in these circumstances, appellate review should be narrow and deferential. Defendant, contrastingly, asserts that "[w]hether the record shows that there was a sufficient factual basis for the plea is a quintessential question of law, which is properly subject to de novo review."

As an initial matter, we disagree with the reasoning of the Court of Appeals majority that "[d]efendant raises an issue of statutory construction." The core dispute between the parties here does not revolve around competing interpretations of a statute, but around competing applications of certain legal requirements to these facts.

¶ 29 Nevertheless, we agree with the ultimate determination of the Court of Appeals majority and with defendant that this appeal is properly reviewed de novo. Under N.C.G.S. § 15A-1022(c), a "judge may not accept a plea of guilty . . . without first determining that there is a factual basis for the plea." In *State v. Agnew*, this Court observed that this statutory condition "requires an *independent judicial determination* that a sufficient factual basis exists before a trial court accepts a guilty plea." 361 N.C. 333, 333–34 (2007) (emphasis added).[3] At its core, such an "independent judicial determination" requires the trial court to exercise judgment and apply legal principles by considering whether the stipulated facts fulfill the various elements of the offense or offenses to which the defendant is pleading guilty. Although a defendant who pleads guilty can and does stipulate to the *factual* summary presented by the State, this stipulation cannot and does not relieve the trial court of its subsequent duty to conduct an "independent judicial determination that a sufficient factual basis exists" to support the *legal* requirements of the charged offenses. *Id.* Accordingly, we hold that a trial court's determination as to whether a sufficient factual basis exists to support a defendant's guilty plea is a conclusion of law reviewable de novo on appeal. *Cf. Plott v. Plott*, 313 N.C. 63, 73 (1985) (noting

---

[3] Although this Court in *Agnew* did not formally state that it was reviewing the trial court's determination de novo, it functionally engaged in de novo review by considering anew the factual information before the trial court when the defendant's guilty plea was accepted. *See Agnew*, 361 N.C. at 337 (considering the facts and record presented to the trial court before its guilty plea determination).

that a trial court's determination is "properly denominated a conclusion of law [when] it states the legal basis upon which [a] defendant's liability may be predicated under the applicable statute(s)"); *Woodard v. Mordecai*, 234 N.C. 463, 472 (1951) (observing that conclusions of law are "reached by . . . an application of fixed rules of law").

**B. "Distinct Interruption" Analysis**

Second, we must consider whether the trial court erred in determining that it had a sufficient factual basis to sentence defendant to three separate and consecutive assault sentences. As noted by both parties during oral arguments, this determination is governed by this Court's recent ruling in *State v. Dew*. 379 N.C. 64, 2021-NCSC-124.

Before *Dew*, different Court of Appeals decisions applied somewhat differing methods of analysis to determine whether the facts of one assaultive episode supported multiple assault charges. While these cases were unified in requiring "a distinct interruption in the original assault followed by a second assault" in order to support multiple assault charges, *State v. Brooks*, 138 N.C. App. 185, 189 (2000), they were divided as to what factors illustrated such a "distinct interruption." In some cases, the Court of Appeals generally looked for evidence of a clear and significant break or demarcation within the assaultive episode. *See, e.g.*, *Robinson*, 275 N.C. App. at 335–36 (finding "no evidence of a distinct interruption in the assault"); *State v. McPhaul*, 256 N.C. App. 303, 317–18 (2017) (same). In others, the Court of Appeals

more specifically applied this Court's analysis in *State v. Rambert* to consider whether the defendant's actions employed different thought processes, were distinct in time, and caused different injuries. *See, e.g.*, *State v. Dew*, 270 N.C. App. 458, 462–63 (applying the three *Rambert* factors to determine whether there was a distinct interruption between assaults); *State v. Littlejohn*, 158 N.C. App. 628, 636 (2003) (same). The use of these differing analytical frameworks created tension between various Court of Appeals opinions considering the issue. *See, e.g.*, *Robinson*, 275 N.C. App. at 340 (Berger, J., dissenting) (opining that the majority opinion "ignores binding precedent and fails to conduct an analysis under *State v. Rambert*"); *compare State v. Dew*, 270 N.C. App. 458, 462–63 (applying *Rambert* factors) *with Robinson*, 275 N.C. App. at 335–36 (not applying *Rambert* factors).

¶ 32 In *Dew*, this Court resolved this tension in favor of the more general "distinct interruption" approach. 379 N.C. 64, 2021-NCSC-124. Because "[m]ultiple contacts can still be considered a single assault[ ] even though each punch or kick would require a different thought process, would not occur simultaneously, and would land in different places on the victim's body[,]" this Court "conclude[d] that the *Rambert* factors are not the ideal analogy for an assault analysis." Accordingly, we "decline[d] to extend *Rambert* to assault cases generally." *Id.* at ¶ 26. Instead, this Court provided examples—though not an exclusive list—of what can qualify as a distinct interruption: "an intervening event, a lapse of time in which a reasonable person may

calm down, an interruption in the momentum of the attack, a change in location, or some other clear break delineating the end of one assault and the beginning of another." *Id.* at ¶ 27. Likewise, the Court clarified "what does *not* constitute a distinct interruption." For instance,

> the fact that a victim has multiple, distinct injuries alone is not sufficient evidence of a distinct interruption such that a defendant can be charged with multiple counts of assault. The magnitude of the harm done to the victim can be taken into account during sentencing but does not automatically permit the State to stack charges against a defendant without evidence of a distinct interruption.

*Id.* at ¶ 28. Further, a defendant's "different methods of attack standing alone are insufficient evidence of a distinct interruption." *Id.* at ¶ 35.

¶ 33        Here, the parties agreed at oral argument that *Dew's* "distinct interruption" analysis governed this case but argued for different results. The State argued that any number of events noted in the factual summaries provided by the prosecutor and Wilson at the hearing could indicate a distinct interruption in the attack, including Wilson pouring out the beer, Wilson locking herself in the bathroom, Wilson blacking out, or defendant "getting ill." Further, the State emphasized that Wilson reported that defendant held her captive in the home for three days, and that over this extended period of time "there had to have been ebbs and flows in the momentum of the attack" constituting a distinct interruption. Contrastingly, defense counsel asserted that the factual summary provided by the State and Wilson at the hearing

clearly and repeatedly described the assault as one continuous episode, without any evidence of distinct interruptions.

¶ 34        We agree with the Court of Appeals majority and defendant that the facts provided at the hearing fail to establish evidence of a distinct interruption in the assault to support multiple assault convictions and sentences. Neither the prosecutor's factual summary nor Wilson's statement note "an intervening event, a lapse of time in which a reasonable person may calm down, an interruption in the momentum of the attack, a change in location, or some other clear break delineating the end of one assault and the beginning of another." *Id.* at ¶ 27. Instead, the factual statements as given describe a confined and continuous attack in which defendant choked and punched Wilson in rapid succession and without pause or interruption.

¶ 35        We acknowledge that one can *imagine* a distinct interruption being described here with additional facts. For instance, if the facts indicated that the attack began in the bathroom but then moved to the bedroom, such a change in location may constitute a distinct interruption. Likewise, if there was evidence presented of multiple different attacks occurring over the course of Wilson's three-day captivity, such a lapse of time and interruption in momentum could clearly constitute a distinct interruption. However, like the trial court, this Court must consider the factual summary not as it *could have been*, but as it was presented. As it was presented, the factual summary provided by the State and Wilson at the hearing describe no such

discernible sequence of events indicating a distinct interruption in the assault.

¶ 36    Without evidence of a distinct interruption in the assault, the trial court did not have a sufficient factual basis upon which to sentence defendant to separate and consecutive assault sentences. Accordingly, we affirm the ruling of the Court of Appeals majority that the trial court erred when it accepted the plea and entered judgment on the three different assault charges. *Robinson*, 275 N.C. App. at 333–34.

**C. Remedy**

¶ 37    Finally, we must consider an appropriate remedy. Below, the Court of Appeals majority relied on this Court's ruling in *State v. Fields* to determine that "the appropriate course of action is to arrest judgment on [d]efendant's convictions for assault on a female . . . and assault by strangulation[,]" and thus remanded the case to the trial court to resentence defendant only on the remaining two charges (assault inflicting serious bodily injury and violation of a DVPO). *Robinson*, 275 N.C. App. at 338 (citing *Fields*, 374 N.C. at 636–37).

¶ 38    We cannot agree. Although this Court in *Fields* held that "the Court of Appeals should have arrested the trial court's judgment for [a lesser included offense] rather than vacating the judgment[,]" 374 N.C. at 637, a key procedural difference between the cases renders that remedy improper here: whereas the defendant in *Fields* was convicted via jury trial, defendant here was convicted via guilty plea. *Id.* at 631. Because a guilty plea, like a contract, is the result of nuanced negotiations between

a defendant and the State, it is not the role of an appellate court to accept certain portions of the plea deal while rejecting others. *See State v. Collins*, 300 N.C. 142, 149 (1980) (viewing a guilty plea "in light of the analogous law of contracts" in which "the consideration given for the prosecutor's promise . . . is defendant's actual performance by [pleading guilty]"). Rather, defendant's plea arrangement constitutes a finished product which must be accepted or rejected in its entirety, not piecemeal. *See* N.C.G.S. § 15A-1023 (describing a judge's authority to either accept or reject a plea arrangement). Accordingly, we modify the ruling of the Court of Appeals on this issue by arresting each of the trial court's judgments and remanding to the trial court for any further proceedings.

## III. Conclusion

According to our decision in *Dew*, "the State may charge a defendant with multiple counts of assault only when there is substantial evidence that a distinct interruption occurred between assaults." 379 N.C. 64, 2021-NCSC-124, ¶ 27. Because the facts presented at defendant's plea hearing did not establish that a distinct interruption occurred between assaults, we affirm the ruling of the Court of Appeals that the trial court lacked a sufficient factual basis to accept defendant's guilty plea. However, because defendant's guilty plea must be accepted or rejected as a whole, we modify the holding of the Court of Appeals by vacating the entire plea arrangement

and remanding to that court for further remand to the trial court for further proceedings.

MODIFIED AND AFFIRMED.

Justice BERGER did not participate in the consideration or decision of this case.

Chief Justice NEWBY dissenting.

This case requires us to determine whether the trial court properly determined that there was a factual basis for defendant's guilty plea. A guilty plea must be substantiated in fact by some substantive material independent of the plea itself which tends to show that the defendant is guilty. Moreover, for sentences to be entered against a defendant for multiple assaults arising from closely connected conduct, the evidence must show a distinct interruption occurred between the assaults. Here the prosecutor's factual summary and the testimony of the victim tended to show that there was a distinct interruption between each assault. Accordingly, there was a factual basis for defendant's plea to each assault and the trial court properly entered each judgment and sentence against defendant. I respectfully dissent.

A defendant's appeal following a guilty plea is limited by statute. *State v. Ledbetter*, 371 N.C. 192, 195, 814 S.E.2d 39, 42 (2018). N.C.G.S. § 15A-1444(e) provides that a "defendant is not entitled to appellate review as a matter of right when he has entered a plea of guilty . . . to a criminal charge in the superior court, but he may petition the appellate division for review by writ of certiorari." N.C.G.S. § 15A-1444(e) (2021). "Certiorari is a discretionary writ, to be issued only for good and sufficient cause shown." *State v. Grundler*, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959) (emphasis omitted). The Court of Appeals may issue a writ of certiorari when

the petition "show[s] 'merit or that error was probably committed below.' " *State v. Ricks*, 378 N.C. 737, 2021-NCSC-116, ¶ 6 (quoting *Grundler*, 251 N.C. at 189, 111 S.E.2d at 9). This Court "review[s] the Court of Appeals' decision to allow a petition for writ of certiorari . . . for an abuse of discretion." *Ricks*, ¶ 5.

¶ 42        "[A] plea arrangement or bargain is '[a] negotiated agreement between a prosecutor and a criminal defendant whereby the defendant pleads guilty to a lesser offense or to one of multiple charges in exchange for some concession by the prosecutor . . . .' " *State v. Alexander*, 359 N.C. 824, 830, 616 S.E.2d 914, 919 (2005) (second alteration in original) (quoting *Plea Bargain*, *Black's Law Dictionary* (7th ed. 1999)). Because "[a] plea of guilty . . . involves the waiver of various fundamental rights," *State v. Sinclair*, 301 N.C. 193, 197, 270 S.E.2d 418, 421 (1980), the General Assembly has enacted legislation to protect criminal defendants, *see State v. Agnew*, 361 N.C. 333, 335, 643 S.E.2d 581, 583 (2007) ("[O]ur legislature has enacted laws to ensure guilty pleas are informed and voluntary.").

¶ 43        One such protection is that "guilty pleas must be substantiated in fact as prescribed by [N.C.G.S. § 15A-1022(c)]." *Id.* N.C.G.S. § 15A-1022(c) provides that

> [t]he judge may not accept a plea of guilty or no contest without first determining that there is a factual basis for the plea. This determination may be based upon information including but not limited to:
>
> (1) A statement of the facts by the prosecutor.
>
> (2) A written statement of the defendant.

(3) An examination of the presentence report.

(4) Sworn testimony, which may include reliable hearsay.

(5) A statement of facts by the defense counsel.

N.C.G.S. § 15A-1022(c) (2021). Moreover,

> [t]he five sources listed in the statute are not exclusive, and therefore '[t]he trial judge may consider any information properly brought to his attention.' *State v. Dickens*, 299 N.C. 76, 79, 261 S.E.2d 183, 185–86 (1980). Nonetheless, such information 'must appear in the record, so that an appellate court can determine whether the plea has been properly accepted.' *Sinclair*, 301 N.C. at 198, 270 S.E.2d at 421. Further, in enumerating these five sources, the statute 'contemplate[s] that some substantive material independent of the plea itself appear of record which tends to show that defendant is, in fact, guilty.' *Id.* at 199, 270 S.E.2d at 421–22.

*Agnew*, 361 N.C. at 336, 643 S.E.2d at 583 (second and third alterations in original).

¶ 44    Here defendant was charged with, *inter alia*, misdemeanor assault on a female, *see* N.C.G.S. § 14-33(c)(2) (2021); felony assault inflicting serious bodily injury, *see* N.C.G.S. § 14-32.4(a) (2021); and felony assault by strangulation, *see* N.C.G.S. § 14-32.4(b) (2021). Our case law defines "assault" as "an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force . . . must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm." *State v. Dew*, 379 N.C. 64, 2021-NCSC-124, ¶ 23 (quoting *State v. Roberts*, 270 N.C. 655, 658, 155 S.E.2d 303, 305 (1967)). Moreover, for defendant to be sentenced for

multiple assaults, it must appear that "a distinct interruption occurred between assaults." *Id.* ¶ 27.

Here there was significant substantive material independent from the plea itself that tended to show a distinct interruption occurred between the assaults. First, the prosecutor offered a factual summary at the plea hearing:

> Your Honor, this occurred on May the 28th, 2018. Officers responded just after midnight that morning, Your Honor, to 37 Amirite Drive, A-m-i-r-i-t-e, Drive in Candler, North Carolina. The caller was Ms. Leslie Wilson who is present today, Your Honor. She stated that she'd been held captive by the defendant for three days and there was an active [domestic violence protective order] in place.
>
> When officers arrived, Ms. Wilson was present and stated that Lewie Robinson, the defendant, had grabbed her around the neck and that while he was choking her she had taken a box cutter from him. During the assault that occurred over that night, Your Honor, Ms. Wilson was punched a number of times causing a broken jaw and a dislodged breast implant. She also had small cuts on her hands that were consistent with the altercation, as well as bruising around her neck. Ms. Wilson describes that during the strangulation she was unable to breathe and felt like she was going to pass out. She had tenderness about her neck for a few days after. Additionally, she was unable to eat food properly for about six weeks after the assault due to the condition of her jaw, Your Honor. Thankfully, thanks to health insurance, she was not out-of-pocket any money for restitution which is why we're not seeking restitution in this case.

Then, when the trial court asked defendant's attorney if she "agree[d] with the factual presentation," defendant's attorney responded, "Yes."

¶ 46     At the trial court's request, Ms. Wilson testified regarding the events

underlying the assault charges:

> We were both drinking and he was getting ill, so I
> dumped all the beer out. Dumped out everything I could
> find. And then I locked myself in the bathroom. And he
> broke two doors trying to get to me and he kept telling me
> to tell him where I had hid the beer. I didn't want to tell
> him then that I'd poured it out because I was so afraid. But
> I poured it out, trying to keep him from getting to this
> point. And when he got after me and I had a box cutter,
> which I was trying to defend myself at that point, and he
> held me down on the bed. I actually blacked out twice. And
> then he was strangling me and told me I needed to learn
> where the pressure points was, with his elbow on my
> jawbone and my throat. And then when I got back up I
> did—I had the box cutter but I was trying—I was scared to
> death. I thought he was going to kill me. I couldn't even
> hardly talk.

¶ 47     This evidence tends to show that distinct interruptions occurred between the

assaults. One assault began when defendant "broke two doors trying to get to" the

bathroom, where Ms. Wilson had locked herself in, and then "grabbed [Ms. Wilson]

around the neck and . . . was choking her" before she took a box cutter from him. At

some point, defendant "got after [Ms. Wilson]" and chased her from the bathroom to

the bedroom. This change in location constituted a distinct interruption. After this

interruption, defendant "held [Ms. Wilson] down on the bed." Defendant "strang[led]

[Ms. Wilson] and told [her that she] needed to learn where the pressure points w[ere],

with his elbow on [Ms. Wilson's] jawbone and [her] throat." Defendant thus caused

Ms. Wilson to black out, creating another distinct interruption. When she awoke, Ms.

Wilson still "had the box cutter" and tried to defend herself, but defendant nonetheless committed another assault by "punch[ing] [Ms. Wilson] a number of times causing a broken jaw and a dislodged breast implant." Thus, the substantive material independent of the plea tends to show that a distinct interruption occurred between the assaults. Accordingly, the trial court did not lack authority to sentence defendant for each assault.

¶ 48        In holding otherwise, the majority errs by wrongly applying a de novo standard of review to the trial court's determination that a factual basis existed for defendant's plea. In so doing, the majority expands the role of the trial court beyond that envisioned by the statute, into one similar to the role performed when reviewing a motion to dismiss. After a defendant moves to dismiss the charges during a trial, the trial court must determine "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). Similarly, the majority states that in determining whether a factual basis exists for a guilty plea, the trial court must "consider[ ] whether the stipulated facts *fulfill* the various elements of the offense or offenses to which the defendant is pleading guilty." When, however, "a defendant pleads guilty, no trial occurs," *State v. Alexander*, 2022-NCSC-26, ¶ 66 (Newby, C.J., concurring in the result), and there is

no motion to dismiss; therefore, the substantial evidence standard does not apply.

¶ 49          Moreover, "[i]n a jury trial the judge instructs jurors on the law, and the jury finds the facts and applies the law." *State v. Arrington*, 371 N.C. 518, 521, 819 S.E.2d 329, 331 (2018). When a defendant pleads guilty, however, he admits his conduct constitutes the offense and waives the right to have a jury make that determination. *See Sinclair*, 301 N.C. at 197, 270 S.E.2d at 421 ("A plea of guilty . . . involves the waiver of . . . the right to trial by jury."). Specifically, in a "transcript of plea," which the trial court may properly consider under N.C.G.S. § 15A-1022(c)(2), the defendant and his attorney represent to the trial court that a factual basis exists for the guilty plea. *See Dickens*, 299 N.C. at 79, 261 S.E.2d at 186 (" '[A] written statement of the defendant' ordinarily consists of defendant's written answers to the questions contained in a document entitled 'Transcript of Plea.' " (quoting N.C.G.S. § 15A-1022(c)). Accordingly, given the defendant's representations and the nature of a plea hearing, the parties do not fully develop the factual record before the trial court. Thus, when accepting a guilty plea, the trial court's role is properly limited to determining whether the plea is "substantiated in fact," *Agnew*, 361 N.C. at 335, 643 S.E.2d at 583, by "some substantive material independent of the plea itself . . . which tends to show that defendant is, in fact, guilty," *id*. at 336, 643 S.E.2d at 583. Therefore, "[i]f the evidence considered in the light most favorable to the State" supports the guilty plea, then the trial court may accept the plea. *Sinclair*, 301 N.C.

at 197, 270 S.E.2d at 421.

¶ 50 Using a de novo review of this limited factual record, however, the majority then holds that "the facts provided at the hearing fail to establish evidence of a distinct interruption in the assault." One need not "imagine," as the majority does, that a distinct interruption "such [as] a change in location" occurred in this case. Rather, the evidence demonstrates exactly the hypothetical situation posited by the majority—one assault occurred in the bathroom, and then defendant chased Ms. Wilson into the bedroom and assaulted her again. Moreover, after defendant strangled Ms. Wilson, causing her to black out, the "lapse of time and interruption in momentum" imagined by the majority occurred until Ms. Wilson awoke. Defendant then assaulted Ms. Wilson a third time. Thus, the evidence tends to show two distinct interruptions occurred.[1]

¶ 51 The trial court did not err by determining that a sufficient factual basis existed for defendant's guilty plea. The Court of Appeals therefore abused its discretion by allowing defendant's petition for writ of certiorari. The decision of the Court of Appeals should be reversed and the trial court's entry of judgment and sentences against defendant should be affirmed. I respectfully dissent.

Justice BARRINGER joins in this dissenting opinion.

---

[1] Further, it should be noted that at the time the trial court accepted the plea, it did not have the benefit of this Court's decision in *State v. Dew*, 379 N.C. 64, 2021-NCSC-124, ¶ 27.